**UNITED STATES of America,
Petitioner-Appellee,**

v.

**Walter SECOR, Respondent-Appellant.**

**No. 476, Docket 72-2161.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 26, 1973.

Decided April 4, 1973.

---

Joseph I. Stone, New York City, for respondent-appellant.

Dennis J. Helms, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., of counsel), for petioner-appellee.

Before KAUFMAN, ANDERSON and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Upon this appeal from a judgment of contempt for failure to comply with two orders of the United States District Court for the Southern District of New York directing appellant, Walter Secor, to comply with a summons issued by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 7602,[1] the sole error claimed by Secor is that the summons directing him to appear at the IRS offices and to turn over certain records violated his Fifth Amendment privilege against self-incrimination. That issue, however, had been raised earlier in a proceeding instituted in the district court pursuant to 26 U.S.C. §§ 7402(b) and 7604(a)[2] to enforce compliance with the IRS summons and had been adjudicated against Secor by a decision and order of the district court from which no appeal had been taken within the time prescribed by law. Accordingly, since Secor is barred by the doctrine of *res judicata* from raising the

1. 26 U.S.C. § 7602 provides:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as

may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

2. 26 U.S.C. § 7402(b) provides:

"(b) *To enforce summons.*—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

26 U.S.C. § 7604(a) provides:

"(a) *Jurisdiction of district court.*—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

issue, we affirm the judgment of the district court.

The history of the government's efforts to interrogate Secor and of the legal proceedings which followed is undisputed. Pursuant to § 7602 the IRS on June 9, 1971, served upon Secor a summons directing him to appear at its offices on June 30, 1971, to testify regarding his tax liability for the year ended December 31, 1968, and to bring with him specified books and records. The Revenue Agent in charge of the matter, Charles Faletty, was informed by Secor's attorney that he had advised Secor, who failed to appear, to invoke his constitutional privilege against self-incrimination and not to answer any questions.

On December 13, 1971, the district court, acting upon a petition of the IRS, issued to Secor an Order to Show Cause why he should not be compelled to comply with the IRS summons served upon him in June. On December 30, 1971, Secor appeared in court and furnished an affidavit of the same date prepared by his counsel, which reiterated his refusal to testify in response to the summons, stating that he was contesting IRS assessments against him for the years 1964–1967, that a tax deficiency had been assessed against him for the year 1968 after he had refused to answer questions with respect to earlier orders, and that he had been convicted in 1966 for failure to register and pay the federal wagering tax. The conviction was set aside pursuant to the subsequent decision in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), which held unconstitutional the wagering tax as violative of the Fifth Amendment. Secor's affidavit requested that he be permitted the right to invoke his constitutional privilege against self-incrimination, that the order to show cause be dismissed, and that the summons issued by the IRS be cancelled.

With the issue thus joined, Judge Pierce in a memorandum opinion entered on February 10, 1972, denied Secor's application, stating "The Court is not aware that anyone has suggested criminal prosecution of respondent based on any alleged gambling activities. . . . If such a situation eventuates, respondent may then urge that his constitutional claims be measured against the *Marchetti* case." Secor was ordered by the court "to obey the mandate contained in the Internal Revenue Service summons which had been served upon him."

Secor neither obeyed the court's order nor took an appeal therefrom. On June 27, 1972, the court, upon the written application of the United States Attorney, a copy of which was served on Secor's attorney, issued a second order directing Secor to comply with the IRS summons by appearing at the IRS offices, this time on July 10, 1972, and by producing the documents and records referred to in the summons. Again Secor neither obeyed the court's order nor took an appeal.

On August 22, 1972, the government moved pursuant to 26 U.S.C. § 7604(b) [3] for an order holding Secor in contempt

---

3. 26 U.S.C. § 7604(b) provides:

"(b) *Enforcement.*—Whenever any person summoned under section 6420 (e)(2), 6421(f)(2), 6424(d)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

because of his failure to obey the court's two earlier orders. An evidentiary hearing was held in which the only witness called by Secor was Revenue Agent Faletty; Secor also offered a limited amount of documentary evidence. Secor's position was that he was not guilty of contempt because he had been justified in refusing to obey the summons on the ground that interrogation pursuant to it would violate his Fifth Amendment rights.

By decision dated September 13, 1972, Judge Pierce adjudged Secor to be in contempt for his refusal to obey the orders of the court. Imposition of sentence was suspended and Secor was fined $25 per day thenceforth for each day upon which he should fail to comply with the IRS summons. Pending appeal the sentence was stayed. On September 18, 1972, Secor filed a notice of appeal from the district court's judgment holding him in contempt.

Upon this appeal Secor asks us to reverse the judgment of contempt on the ground that interrogation of him pursuant to the IRS summons would violate his Fifth Amendment rights. However, we must first determine whether we are precluded from determination of that issue, interesting though it may be, by Secor's failure to take a timely appeal from the district court's earlier orders directing him to comply with the IRS summons. The government urges that when his time to appeal from the February 10, 1972 order expired the district court's decision in this proceeding became *res judicata* as to the sole issue which he now seeks to raise and that that order cannot now be collaterally attacked. We agree.

The final and appealable nature of a district court's order enforcing an IRS summons in a proceeding instituted pursuant to 26 U.S.C. §§ 7402(b) and 7604 (a) was firmly established by the Supreme Court in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). There the Court, affirming the denial of declaratory and injunctive relief sought by attorneys for the tax-payers against an IRS summons issued under § 7602, held that the taxpayers' constitutional rights were fully protected for the reason that in order to enforce the IRS summons the government would be required to institute an adversary proceeding in the district court (as it did here) for an order enforcing the summons, in which the taxpayer could assert and litigate his constitutional rights and appeal as a matter of right from an adverse decision and enforcement order.

"If the Secretary or his delegate wishes to enforce the summons, he must proceed under § 7402(b), which grants the District Courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.'

"Any enforcement action under this section would be an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete protection to the witness.

\* \* \* \* \* \*

"Furthermore, we hold that in any of these procedures either before the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker, 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege, Sale v. United States [8 Cir.] 228 F.2d 682. . . . Finally, we hold that such orders are appealable. See O'Connor v. O'Connell, 253 F.2d 365 (C.A. 1st Cir.); In re Albert Lindley Lee Memorial Hospital, [209 F.2d 122 (C.A. 2d Cir.)]; Falsone v. United States, [205 F.2d 734 (C.A. 5th Cir.)]; Bouschor v. United States, 316 F.2d 451 (C.A. 8th Cir.); Martin v. Chandis Securities Co., 128 F.2d 731 (C.A. 9th Cir.); D. I. Operating Co. v.

United States, 321 F.2d 586 (C.A. 9th Cir.). Contra, Application of Davis, 303 F.2d 601 (C.A. 7th Cir.). It follows that with a stay order a witness would suffer no injury while testing the summons." Reisman v. Caplin, 375 U.S. at 445–446, 449, 84 S.Ct. at 512–513.

Accord, Daly v. United States, 393 F.2d 873, 876 (8th Cir. 1968) ("The order of the trial court in enforcing the summons of the revenue agent became an appealable order upon its proper entry. . . . [t]he order entered was similar to a final judgment in any other case"); see McGarry's Inc. v. Rose, 344 F.2d 416 (1st Cir. 1965); Tillotson v. Boughner, 327 F.2d 982 (7th Cir. 1963).

Since the district court's February 10, 1972, decision and enforcement order represented a final adjudication of Secor's Fifth Amendment defense, he cannot now turn back the hands of the clock and retry an issue that was litigated on the merits in an adversary proceeding where due process requirements were fully observed. To permit such a collateral attack would be to make a mockery of the well settled doctrine of res judicata. See Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929); Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); Durfee v. Duke, 375 U.S. 106, 83 S.Ct. 509, 9 L.Ed.2d 496 (1963); Daly v. United States, 393 F.2d 873 (8th Cir. 1968). The situation here is in all legally significant respects the same as that before the Supreme Court in *Oriel, supra,* where it held, in a contempt proceeding for violation of a bankruptcy court turnover order, that the bankrupt was precluded from relitigating defenses raised and tried in the earlier turn-over proceeding itself, resulting in a final order from which no appeal had been taken.

"It would be a disservice to the law if we were to depart from the longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. Every precaution should be taken that orders issue, in turnover as in other proceedings, only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order. But when it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place." Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948). See also 9 J. Moore, Federal Practice ¶ 110.13 [4] at 168–69 (2d ed. 1972).

These principles apply with equal force here, where we are not confronted with any contention that Secor was denied due process in the enforcement proceeding or that he was barred from raising his Fifth Amendment claims on a question-by-question basis before the IRS. The latter procedure might have represented at least an effort to furnish non-incriminatory information to the IRS and have permitted the court to rule on specific questions claimed to be incriminatory. But Secor simply refused on Fifth Amendment grounds to submit to *any* interrogation.

Since Secor is thus barred by *res judicata* from raising again the issue of whether he properly invoked his privilege against self-incrimination, we need not consider on the merits his claim that enforcement of the IRS summons would violate the Fifth Amendment.[4]

4. On this issue we do note that claims of self-incrimination in IRS civil investigatory proceedings have been approached differently by different courts. Compare United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969), with United States v. White, 301 F.Supp. 1129, 1131 (D.R.I.1969). See also United States v. Hatch, 31 AFTR2d ¶ 73–465 (D.C. Idaho, Civ. No. 472–16, June 28, 1972);

Although Secor does not raise the issue, we note that there was ample evidence in the record to support the district court's finding of contempt. His conduct in refusing to comply with the district court's February 10, 1972 enforcement order was not free of contumacy. Upon the entry of that order he faced the choice of complying or taking an appeal. Instead of following either course, he deliberately defied the order. Four months later, when the court entered its second enforcement order in the hope that Secor might comply, he adhered to his course of disobedience. The order holding him in contempt was fully justified and is affirmed.

United States v. Runte, 1973 CCH U.S. Tax Cases ¶ 9265 (W.D.La., Civ. No. 18514, Jan. 18, 1973). United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed. 2d 1 (1970), relied on by Secor, did not rule upon the issue which he seeks to raise on this appeal. There the Supreme Court held that where a defendant did not invoke his privilege against self-incrimination in a civil condemnation proceeding instituted by the government, testimony given by him in that proceeding could be used against him in a subsequent criminal prosecution. To the extent that the Court implied that the defendant could have invoked his privilege in the civil proceeding it should be noted that, unlike the present case, the criminal prosecution was not only contemplated at the time of the civil proceeding but was "nearly contemporaneous" with it.

We, of course, intimate no views at this time on the question whether the pendency of a criminal prosecution is an essential prerequisite for invocation of the Fifth Amendment privilege in a civil proceeding.