UNITED STATES of America,
Plaintiff,

v.

1,550.44 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF McLEAN, STATE OF NORTH DAKOTA, et al., Defendants.

Civ. No. 1135.

United States District Court,
D. North Dakota,
Southwestern Division.

Jan. 22, 1974.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Floyd B. Sperry, Bismarck, N. D., for defendants.

## ORDER

Van SICKLE, District Judge.

Landowner, Albert Wall has, by motion, asked this Court to re-open the question of the necessity of the taking of his land for a canal for the Garrison Diversion Unit. He urges that there are a myriad of facts which constitute reasons why "necessity" does not, in fact, exist. Counsel for the movant asks for an order opening the question of necessity and granting him a hearing at which he proposes, first, to prove the existence of his alleged facts; and, second, to argue that these facts require the Court to find that necessity is non-existent and order the government to return the property, fill the canal and compensate the landowner for his damage.

■ The motion is based on Fed.R. Civ.P. 60(b), with excusable neglect claimed as the grounds for the requested relief. Counsel argues that state practice should control the procedure and the question under Rule 60. Since this is Federal Court and the motion is made under the Federal Rules, Federal law will govern. From the time this action was commenced, or very shortly thereafter, the Walls' were represented by two very competent firms of lawyers, who have since been replaced by present counsel. It is argued that the failure of the former counsel to decide to question the necessity of the taking was an act of excusable neglect. Affirmative tactical decisions of counsel cannot constitute neglect. While this could be dispositive of the motion, a decision in this matter need not rest on such narrow grounds.

The landowner seeks a hearing to prove facts that he contends constitute grounds for holding that there is no necessity for the taking of the property in question. He alleges five such grounds exist. They are:

■ 1. The procedure is unconstitutional in that the failure to hold a hearing on the question of necessity is a denial of due process.

A hearing could have been had, its waiver was a conscious decision based on experienced counsel's analysis of the best way to protect his client's interests. The fact that the hearing was available satisfies the constitutional requirements of due process.

■ 2. There was fraud and oppressive dealing in negotiating with the landowners.

Alleged evidence of fraud is the wide variance between the appraisal of the government and the present price of land in the area. The value which is of concern is, of course, the value as of the date of taking, not today's prices. Land values have increased dramatically during the past two years and even then, a difference between the value placed on the land by the government, $80.00 per acre, and the value placed on the land by its owner today, $200.00 per acre, is not unusual in actions to condemn private property for Federal projects such as this and certainly does not constitute fraud, even if taken as proved. It is alleged that it is oppressive dealing to require farmers to "match wits" with engineers and other government officials. It is difficult to see how this could be avoided if the government is to take land. At any rate, here the landowners were represented by lawyers who are experienced in condemnation matters. The mere fact that trained person-

nel represented the government is not evidence of oppression.

3. The taking was arbitrary and capricious.

It is claimed that the fact that the canal crosses the Wall farm is evidence of this, as it is claimed that it would be far wiser to locate the canal to the north of the Wall farm and then this farm would not be cut up by the "zig-zag" canal and the water supply for cattle would not be disturbed. In this regard, the courts are not in a position to substitute their judgment for that of the agency constructing the project [see Nichols on Eminent Domain, § 4.11].

4. The taking was excessive.

Nichol's, § 4.11, points out that this question is not reviewable. However, the excess taking alleged is land for wildlife. This ignores the fact that Congress specifically authorized the project for fish and wildlife enhancement [see House Document 325. 86th Congress, 2d Session].

5. The project may be stopped.

It is pointed out that Garrison Diversion Unit is now receiving criticism both from foreign and domestic sources which may cause the project to be halted. In such a case, it is argued:

"It would take relatively little to close the canal excavation, over the Wall farm . . . ."

Counsel cites, as an example of a halted project, the Cross-Florida Barge Canal. This project was halted when about one-third complete, but the excavation remains open. It is not within our province to speculate either as to the likelihood of the project being halted or as to the effect on the Wall's if such an event did come to pass. It requires more than a possibility of an occurrence to open an inquiry into the necessity of taking. If the proj-

ect should, at some future date, be halted, it might then be time to consider the question of the simplicity of closing the canal.

It must be kept in mind that Congress has authorized the Bureau of Reclamation to construct this project, which includes the authority to acquire the needed land. On this subject Nichols says:

"The overwhelming weight of authority makes clear beyond any possibility of doubt that the question of the necessity or expediency of taking in eminent domain lies within the discretion of the legislature and is not a proper subject for Judicial review."

[Nichols on Eminent Domain, § 4.11]

Therefore, it is ordered, That the motion to re-open the question of the necessity for the taking of the property herein is, in all things, denied.