UNITED STATES of America and James F. Spillane, Revenue Officer, Internal Revenue Service, Petitioners,

v.

William E. KIRKSEY, Respondent.

No. M–18–304 (RWS).

United States District Court, S.D. New York.

March 14, 1986.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for petitioners; Cynthia L. Keefee, Sp. Asst. U.S. Atty., of counsel.

Steven H. Dickman, and Howard M. Koff, Roslyn, N.Y., for respondent.

## OPINION

SWEET, District Judge.

Respondent William E. Kirksey ("Kirksey") has moved pursuant to Rule 60(b) Fed.R.Civ.P. for relief from an order issued by this court directing Kirksey to comply with an Internal Revenue Service ("IRS") summons. Petitioners, the United States of America and Revenue Officer James F. Spillane (the "government") have cross-moved for an order holding Kirksey in civil contempt for his failure to comply with the IRS summons which directed him to pro-

duce certain records in his possession. For the reasons set forth below, Kirksey's Rule 60(b) motion is denied, and the government's motion for civil contempt sanctions is granted.

**Facts**

On March 1, 1985, Revenue Officer James F. Spillane ("Spillane") served an IRS summons on Kirksey in connection with a civil investigation to determine his tax liability for the years 1980, 1981, 1982, and 1983. On March 21, 1985 Kirksey failed to produce the documents and records specified in the summons, and on May 20, 1985 the District Director of the IRS advised Kirksey by letter that a new June 10, 1985 summons date would be set and a second failure to comply would prompt the IRS to institute legal proceedings in the federal district court. Kirksey did appear for his June 10, 1985 appointment, but informed Spillane that he did not have the summoned documents, his records were in disarray, and requested an extension of time for the filing of his tax returns. This request was denied, and the IRS secured an order from this court on August 8, 1985 directing Kirksey to appear on September 3, 1985 and show cause why he should not comply with the summons.

On September 3, 1985, Kirksey appeared *pro se* and requested an adjournment of the order to enable him to retain counsel, claiming that medical problems prevented him from obtaining counsel earlier, and that he anticipated problems meeting the compliance schedule set by the summons. The government consented to adjourn the hearing until September 24, 1985.

The depositions of Mr. Tiberio Schwartz ("Schwartz") and Ms. Rosemary Carroll ("Carroll"), attorneys of the firm of Phillips, Nizer, Benjamin, Krim & Ballon ("Phillips, Nizer" or the "firm"), established that Kirksey then contacted Carroll on September 16, 1985 requesting that she represent him in this summons enforcement proceeding. On September 20, 1985 Kirksey, Carroll and Schwartz, a tax partner at the firm, met to discuss Kirksey's efforts to comply with the IRS investiga-

tion. The deposition testimony of both attorneys reveals that Kirksey did not wish to oppose the government's order to show cause but wanted Carroll and Schwartz to obtain additional time for him to arrange his personal and corporate records. Schwartz also stated that although he considered opposing the order to show cause and any defenses which Kirksey might have had to the summons, "Mr. Kirksey told us the records were clean. There was no crime whatsoever based on what he was telling me. There was no reason for anyone to take the Fifth Amendment ... he just needed additional time and he wanted us to determine whether the returns took into account all of the advantages to which he was entitled." Schwartz also stated that he did not personally examine the documents, as they were in a state of disorder.

On or about September 23, 1985, Carroll telephoned Mr. Elliot Horowitz ("Horowitz"), Kirksey's accountant, to determine how long it would take to arrange Kirksey's compliance with the IRS summons. According to Carroll, who relies on contemporaneous notes of the conversation, Horowitz informed her that Kirksey was ready to turn over records and receipts from all years, and that it would take him at least thirty days to complete the returns after these records were delivered. Horowitz claims in his affidavit that he told Carroll that Kirksey's records required organization, and that he would need approximately forty-five days in which to prepare the tax returns. Both Horowitz and Kirksey contend that Carroll's belief that the records were ready for return preparation was a misunderstanding.

On October 8, 1985, the adjourned date of the order to show cause hearing, Carroll appeared on behalf of Kirksey and consented to the entry of the enforcement order on condition that the government grant Kirksey forty-five days in which to respond to the summons. Carroll's deposition testimony reveals that she informed Kirksey of this hearing prior to October 8, 1985 and later informed him of the November 19, 1985 compliance date set by the enforce-

ment order. Carroll also testified that she met with Kirksey and Horowitz on October 18, 1985 and that neither Kirksey nor Horowitz indicated that any of the responsive documents were subject to a Fifth Amendment privilege, and that Kirksey never told her that document preparation would be a massive undertaking.

At the beginning of November, 1985, Kirksey telephoned Carroll to inform her that another attorney would be representing him in the tax matters in question, and that there had been a "misunderstanding" regarding the time it would take to comply with the enforcement order. Kirksey stated that he and Horowitz needed considerably more time than they had indicated previously.

At Kirksey's request, Carroll prepared an affidavit of December 6, 1985 to be submitted in connection with the instant motion for relief. Carroll states that she based her consent to the October 8, 1985 enforcement order on representations from Kirksey and Horowitz that Kirksey's presentation of records had begun and that Horowitz would be able to prepare tax returns and comply with the summons within thirty days of receiving the materials. The Carroll affidavit also states that on October 8, 1985 she had not seen a copy of an affidavit which Kirksey submitted to the United States Attorney's office in September, 1985 in which he claims to have stated that the reconciliation of his accounts would take several months and could not be completed until December 31, 1985 at the earliest. Although no copy of this alleged affidavit appears in the papers submitted, Kirksey refers to his "previous projection" that the records could be prepared no earlier than December 31, 1985, a projection he now terms "somewhat premature."

**Rule 60(b)(1)**

Kirksey seeks relief from the October 8, 1985 enforcement order under Rule 60(b)(1), Fed.R.Civ.P., which provides that a court may relieve a party from an order because of "mistake, inadvertence, surprise, or excusable neglect." Kirksey contends that his former counsel mistakenly consented to a summons enforcement order which set an unrealistic compliance date, a date which did not take into account the enormous time and effort required to assemble Kirksey's records before turning these documents over to his accountant for preparation of the tax returns. According to the Kirksey affidavit, the compliance date of November 19, 1985 was not "fully disclosed" to him until he was so informed by his new counsel and he states in his supplementary affidavit that he was not informed of any commitment that Carroll intended to make on his behalf. However, a review of the supporting affidavits and depositions, and the relevant standards for granting Rule 60(b)(1) relief demonstrates that Kirksey cannot establish neglect or mistake of counsel.

A motion under Rule 60(b) "is addressed to the sound discretion of the trial court." *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir.1981); *Altman v. Connally*, 456 F.2d 1114 (2d Cir.1972), and a district court has broad discretion to deny or grant relief in light of the particular circumstances of the case." 7 *Moore's Federal Practice* ¶ 60.19 (1983).

While Kirksey claims that Phillips, Nizer's projected timetable was a "misunderstanding," his own affidavit established that he possessed the knowledge of the allegedly massive nature of this undertaking long before he retained Carroll and Schwartz to represent him, as evidenced by his September, 1985 affidavit to the United States Attorney's office setting December 31, 1985 as his earliest possible compliance date. Both Kirksey and Horowitz had several opportunities to convey this assessment of the task in the September 20, 1985 meeting at Phillips, Nizer, in subsequent telephone calls with Carroll concerning the upcoming enforcement order proceeding, and in the October 18, 1985 meeting among Carroll, Horowitz and Kirksey to discuss the compilation of the summons documents. In light of Kirksey's admissions that he possessed the knowledge of the time it would take to prepare the records,

Kirksey's own failure to inform his counsel of these facts is not "mistake" or "neglect" under Rule 60(b).

As the court stated in *Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.*, 73 F.R.D. 16, 21 (D.Del.1976), *aff'd*, 564 F.2d 654 (3d Cir.1977), "If the decision not to defend, or not to introduce certain evidence, was made consciously, on the basis of free knowledge of the issues involved, the party cannot claim mistake, inadvertence, surprise, or excusable neglect." Courts have repeatedly held that when petitioners fail to inform their counsel of the complete factual background regarding their case, this failure will not provide grounds for Rule 60(b) relief. *Bershad v. McDonough*, 469 F.2d 1333 (7th Cir.1972) (neither ignorance nor carelessness on the part of a litigant or his attorney will provide grounds for Rule 60(b) relief); *Hoffman v. Celebrezze*, 405 F.2d 833 (8th Cir. 1969); *National Bank of Joliet v. W.H. Barber Oil Co.*, 69 F.R.D. 107, 109 (N.D.Ill. 1975) ("whatever the actual reason for petitioners not informing their counsel on this matter earlier, their failure to do so will not provide grounds for Rule 60(b) relief").

Kirksey claims that the November 19, 1985 compliance date resulted from a misunderstanding between Hoffman, Kirksey and Carroll, but Kirksey has offered no evidence to rebut Carroll and Schwartz's testimony that in the several meetings and telephone calls among the participants to the action after the entering of the enforcement order, neither Kirksey nor Horowitz objected to the November date, and Carroll sent a progress letter to the office of the AUSA on October 21, 1985 indicating that document production was well underway. Indeed, although Kirksey claims that he was not "fully informed" of that date before the October 8, 1985 hearing, he does not rebut Carroll's statement that she gave him a copy of the enforcement order, and discussed his compliance in several telephone conversations. Under these circumstances, Kirksey's evidence falls far short of meeting his burden in establishing mistake or neglect. *National Bank of Joliet*

*v. W.H. Barber Oil Co., supra*, 69 F.R.D. at 109.

Kirksey also argues that Phillips, Nizer's decision to consent to the government's order to show cause constituted neglect or inadvertence of counsel within the meaning of Rule 60(b). However, Kirksey's support for this contention consists of cases in which litigants were relieved from a final judgment because of counsel's administrative errors. *See e.g.*, *Silas v. Sears, Roebuck & Co., Inc.*, 586 F.2d 382 (5th Cir. 1978) (failure of counsel to appear at pretrial conference, to prepare pretrial stipulation, to reply to interrogatories); *Griffin v. Kennedy*, 344 F.2d 198 (D.C.Cir.1965) (inadvertent stipulation of counsel to facts contrary to claim in complaint); *La Barbera v. Grubard*, 112 F.2d 738 (2d Cir.1940) (default judgment because of failure of counsel to appear at hearing); *Weller v. Socony Vacuum Oil Co. of New York*, 2 F.R.D. 158 (S.D.N.Y.1941) (failure to serve a bill of particulars due to inadvertence of clerk).

Here there was no such inadvertence or neglect. According to the Schwartz affidavit, Kirksey told his attorneys that the records sought were "clean," that he intended to produce all documents responsive to the summons, and that he sought the aid of Phillips, Nizer in order to gain time to put these records in order. A conscious tactical decision does not fall within the meaning of neglect or inadvertence of counsel, and does not warrant Rule 60(b) relief. *United States v. 1.550.44 Acres of Land*, 369 F.Supp. 1078, 1079 (D.N.D.1974) (affirmative tactical decisions of counsel cannot constitute neglect). The Schwartz affidavit reveals that he analyzed the question of whether to oppose the order to show cause and concluded that in view of Kirksey's expressed desire to comply with the summons if he could secure addition time to compile his records, opposing the order made no sense (Schwartz deposition, January 8, 1986, p. 26–27). Although Kirksey now challenges Schwartz' decision to consent to the entry of an enforcement order, that decision was a legal conclusion based on the information which

Kirksey provided to his attorneys. "[G]enerally a party who makes an informed choice will not be relieved of the consequences when it subsequently develops that the choice was unfortunate." *Dal International Trading Co. v. Sword Line, Inc.*, 286 F.2d 523, 525 (2d Cir.1961); *United States v. Erdoss*, 440 F.2d 1221 (2d Cir.1971) (when a conscious decision has been made by counsel, ignorance of the law is not excusable neglect contemplated by Rule 60(b)).

### Fifth Amendment

Finally, Kirksey argues that the summons enforcement order should be vacated because his prior counsel consented to the entry of the order without considering his constitutional right to oppose the summons with a Fifth Amendment claim against compulsory self-incrimination. The government contends that Kirksey has not demonstrated that any Fifth Amendment privilege attaches to the records in question, and that even if such a privilege had attached, Kirksey waived the privilege on several occasions.

■ "It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) citing *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1866) and the privilege does apply to a sole proprietor's production of his own papers. *Id.*, 417 U.S. at 87–88, 94 S.Ct. at 2182–83; *In re Doe*, 711 F.2d 1187, 1190–91 (2d Cir.1983). However, to establish an entitlement to claim a Fifth Amendment privilege, Kirksey must demonstrate that compliance with the IRS summons would present a "real and substantial risk" of self-incrimination. *In re Gilboe*, 699 F.2d 71, 74–75 (2d Cir.1983). In *United States v. Fox*, 721 F.2d 32 (2d Cir.1983) the Second Circuit elaborated on the nature of this requirement, holding that a sole proprietor who wishes to challenge an IRS summons for document production on Fifth Amendment grounds is required to make a specific showing of how the summoned documents would tend to incriminate him and cannot rest upon the mere possibility that answers to questions might provide a link which would lead to prosecution.

■ Here Kirksey makes no showing that the summoned documents present a risk of self-incrimination, but rests solely on the declaration that: "the mere *act* of producing the summoned documents may constitute a compulsory *authentication* of incriminating information." (Respondent's Supplemental Memo of Law, emphasis in original). Indeed, throughout the prior proceedings in this action, Kirksey has claimed the contrary. The deposition testimony of his former attorneys reveals that he repeatedly stated the records are "clean," that he intended to comply fully with the IRS summons, and that his sole reason for retaining counsel was to secure a longer time period in which to arrange responsive documents and records. Kirksey's failure to contradict these assertions in the Carroll and Schwartz affidavits, combined with the failure of his new counsel to review the records in question in order to identify specific incriminating documents, strengthens the government's contention that Kirksey is asserting this Fifth Amendment claim in an attempt to avoid a civil contempt citation. As the Supreme Court stated in *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), "the witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to determine whether his is justified." *Id.* at 486, 71 S.Ct. at 818 (citations omitted). In this court's view, Kirksey's blanket invocation of the Fifth Amendment is insufficient to support a claim of privilege.

### Waiver

■ Furthermore, even if Kirksey could establish an entitlement to the privilege,

his failure to assert the privilege has resulted in its waiver. In *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), the Supreme Court held that a defendant in a contempt proceeding for failure to comply with an IRS summons could not raise a defense of lack of possession or control of the records for the first time in the contempt proceeding. In *Rylander* the Court stated:

> Because a proceeding to enforce an IRS summons is an adversary proceeding in which the defendant may contest the summons "on any appropriate ground" ... and because lack of possession or control of those records is surely such a ground, the issue may not be raised for the first time in a contempt proceeding.

*Id.* at 757, 103 S.Ct. at 1552. While the defense considered in *Rylander* was lack of possession of the summoned records, the Second Circuit has applied this *res judicata* concept as a "... basic premise that the issues raised (or those that could have been raised) at an enforcement hearing are res judicata with respect to the same parties at a later contempt hearing ..." *United States v. Edgerton,* 734 F.2d 913, 917 (2d Cir.1984); *United States v. Secor,* 476 F.2d 766 (2d Cir.1973) (appellant barred from relitigating a Fifth Amendment claim which he raised and lost at the enforcement hearing and failed to appeal).

This line of decisions controls the case at bar, as Kirksey and his attorneys had ample opportunity to raise a Fifth Amendment defense to compliance. Kirksey appeared *pro se* on September 3, 1985 seeking adjournment of the scheduled enforcement hearing and complained of medical problems which prevented him from complying with the summons. On October 8, 1985 Carroll appeared at the enforcement hearing on Kirksey's behalf and consented to the entry of the enforcement order, and in her subsequent letter to the IRS she stated that document production was underway. At no time did Kirksey or his attorneys mention a privilege against self-incrimination, although the Schwartz deposition demonstrates that he considered opposing the order to show cause but made a conscious decision to comply on the basis of his client's representations and his desire to have the IRS summons "continue to treated as merely a civil matter" (Schwartz deposition Jan. 8, 1986, p. 18).

Just one year ago in *United States v. Fein,* No. M–18–384 Feb. 1, 1985 [Available on WESTLAW, DCTU database] this court confronted a similar Fifth Amendment defense to the entry of a civil contempt order compelling compliance with an IRS summons. Holding the respondent in civil contempt, this court stated:

> Allowing Fein to assert the privilege at this stage would be giving him carte blanche to avoid compliance with a summons and ignore a valid enforcement order until such time as he could no longer escape the threat of sanctions. Such a result would frustrate the system established to ensure that witnesses comply with valid subpoenas.

Memorandum Opinion at p. 4.

Kirksey's repeated failure to assert a self-incrimination defense despite the presence of competent counsel was a knowing and intelligent waiver of his Fifth Amendment privilege which cannot be relitigated at this stage.

Because Kirksey has not demonstrated that his failure to produce documents and records was justified by the presence of a Fifth Amendment privilege, and has not met the burden of demonstrating "neglect" or "mistake" within the meaning of Rule 60(b), an order will be entered holding him in contempt of the October 8, 1985 enforcement order. Kirksey will have thirty (30) days from the date of this order in which to comply with the outstanding summons. He will be fined fifty ($50.00) dollars per day for each day subsequent to the thirty (30) day grace period in which the summoned records are not delivered.

IT IS SO ORDERED.