UNITED STATES of America and James F. Spillane, Revenue Officer, Internal Revenue Service, Petitioners,

v.

William E. KIRKSEY, Respondent.

No. M–18–304 (RWS).

United States District Court, S.D. New York.

July 7, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for petitioners; Cynthia L. Keeffe, Sp. Asst. U.S. Atty., of counsel.

Steven H. Dicknan, Roslyn, N.Y., Howard M. Koff, Albany, N.Y., for respondent.

SWEET, District Judge.

## OPINION

Petitioners the United States of America and James F. Spillane (hereinafter "government") have moved for sanctions pursuant to Fed.R.Civ.P. Rule 11, for costs and attorney's fees arising out of respondent William E. Kirksey's ("Kirksey") Rule 60(b) motion for relief from this court's enforcement order of October 8, 1985. Kirksey has cross-moved for relief from this court's opinion of March 18, 1986, 631 F.Supp. 165,

holding him in civil contempt for failure to comply with an Internal Revenue Service ("IRS") summons and court enforcement order. For the reasons set forth below, the government's motion for sanctions is granted.

## Prior Proceedings

On March 1, 1985 the IRS served a summons on Kirksey in connection with a civil investigation to determine his tax liability for the years 1980 through 1983. After three failures to produce documents and records requested in the summons, the IRS secured a show cause order from this court on August 8, 1985 directing Kirksey to appear on September 3, 1985 to explain his failure to comply with the summons. After obtaining an adjournment of this date from the court, Kirksey retained the firm of Phillips, Nizer, Benjamin, Krim & Ballon ("Phillips, Nizer") to represent him in this matter. On October 8, the adjourned date of the order to show cause, Phillips, Nizer on Kirksey's behalf consented to the entry of an enforcement order which granted Kirksey an additional forty-five days in which to respond to the summons, a compliance date set for November 19, 1985.

In early November, 1985, Kirksey retained new attorneys to represent him in this matter and terminated his relationship with prior counsel at Phillips, Nizer. Kirksey's new attorneys, who claimed to be unaware of the outstanding enforcement order, made a motion pursuant to Rule 60(b), Fed.R.Civ.P., for relief from the enforcement order on the grounds of "mistake, inadvertance, surprise or excusable neglect." The government cross-moved to hold Kirksey in civil contempt for failure to produce the documents ordered, and both motions were argued on January 10, 1986. By opinion filed March 18, 1986, this court denied Kirksey's Rule 60(b) motion and gave him thirty days, on or before April 18, 1986, to produce the documents or be held in civil contempt resulting in a fine of fifty ($50.00) dollars per day for every day, subsequent to the thirty-day grace period, in which the records were not delivered.

On April 17, 1986, the government filed the instant motion for sanctions pursuant to Rule 11, Fed.R.Civ.P., seeking costs and attorney's fees rising from Kirksey's Rule 60(b) motion of January 10, 1986, and counsel for Kirksey has again cross-moved for Rule 60(b) relief from this court's March 18, 1986 opinion holding him in civil contempt. These motions were argued on May 30, 1986 where this court denied Kirksey's renewed Rule 60(b) motion, assessed civil contempt fines of $1,500 pursuant to the March 18, 1986 opinion as the required records had not been delivered, and reserved judgment on the government's motion for costs and attorney's fees.

## Discussion

The government contends that it is entitled to costs and a reasonable attorney's fee in connection with its opposition to Kirksey's Rule 60(b) motion for relief from the October 8, 1985 enforcement order. These costs and fees are warranted, according to the government, because Kirksey's motion was neither well-founded in fact nor supported by existing precedents, and, therefore, violated the express prohibitions of Rule 11, which provides in relevant part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ...

The Second Circuit's opinion in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985) provides guidance for applying these amended Rule 11 standards in the wake of the advisory committee's expressed desire to "reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obli-

gations by the imposition of sanctions." Notes of Advisory Committee on Rules, 1983 Amendment. Formulating a Rule 11 standard for this Circuit, the *Eastway* court stated:

> Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 254 (emphasis in original).

While counsel for Kirksey contends that the two grounds which they asserted for Rule 60(b) relief were well-founded in fact and were warranted by existing law, an examination of the prior proceedings and arguments put forth in support for Rule 60(b) relief demonstrate that Kirksey's counsel did not conduct a reasonable pre-pleading inquiry into the basis for his claims.

First, counsel for Kirksey claimed that Phillips, Nizer mistakenly consented to a November 19, 1985 compliance date for the production of records despite the impossibility of this task, entitling Kirksey to relief from this court's enforcement order. It was defense counsel's duty to inquire into the actuality of these charges and not merely to assert the mistake of prior counsel as a convenient attempt to delay the submission date for the records in question. This inquiry, which the government ultimately was forced to undertake, revealed that the decision to consent to the production of records was a decision jointly made by Kirksey, his accountant and his Phillips, Nizer attorneys, and was not the rash determination of neglectful counsel. The failure to make this initial determination was particularly noteworthy because the information was readily obtainable from Phillips, Nizer, a source more accessible to Kirksey, their former client, than to the government. This failure to familiarize

themselves with the prior negotiations in the case was compounded by counsel's failure to determine whether such conduct on the part of prior counsel constitutes grounds for Rule 60(b) relief. *See United States v. Kirksey*, M–18–304 (March 14, 1986, S.D.N.Y.) slip op. at 5–6. As Kirksey's counsel admitted, they had so little familiarity with the case in November, 1985, that they did not know that an enforcement order was in effect directing compliance, but rather thought the November 19, 1985 date was a motion date.

The factors which prompted the Second Circuit to deny the imposition of sanctions in *Kamen v. American Telephone & Telegraph Co.*, 85–7799 (2d Cir., May 23, 1986) slip op. at 3609, dictate the opposite conclusion on the facts presented here:

> In sum, this is an inappropriate one for sanctions. The district court found that plaintiff had provided information to counsel, plaintiff's counsel had sought relevant information within the defendant's control, which they declined to provide; the law ... is quite unsettled.

Kirksey's substituted counsel did not diligently pursue the information under its control, in the face of an affidavit from a Phillips, Nizer attorney, Rosemary Carroll, which contradicted Kirksey's version of his compliance time estimations, and an affidavit from Kirksey's accountant which at best supported the notion that he had wanted an additional forty-five days after the records were organized in which to prepare the returns.

Similarly, Kirksey's belated Fifth Amendment defense to record production was asserted and reasserted in the present Rule 60(b) motion, with a cavalier statement that in-depth examination of the documents in question was unnecessary:

> Although it is true that counsel for respondent have not reviewed all of the voluminous books and records in issue, they are of course aware of the *nature* of these materials.

(Memorandum of Law in Opposition, May 15, 1986, at p. 3). Indeed, at the January 10, 1986 hearing on the original Rule 60(b)

motion, counsel admitted that they did not even review the documents for which they were asserting a Fifth Amendment privilege. *See* Transcript of Proceeding at p. 13.

The Advisory Committee Notes to Rule 11 suggest several factors for evaluating whether counsel have made a "reasonable inquiry":

> Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Putting aside the impropriety of failing to conduct an inquiry concerning the documents or the stage of the enforcement proceedings prior to moving for Rule 60(b) relief, *see Kamen v. American Telephone & Telegraph, supra,* 791 F.2d 1006 (2d Cir. 1986) (Kearse, J., dissenting), Kirksey's counsel had over seven weeks between the filing date of November 20, 1985 and the return date of the motion on January 10, 1986 in which to examine the documents and supply the court with a basis for awarding relief. All the documents were compiled by Kirksey, were in his possession, and had been the subject of an IRS summons for at least nine months. Both Kirksey and his attorneys had ample time to conduct a reasonable inquiry into the existence of privileged documents. Asserting a privilege without identifying potentially incriminating material, particularly in the context of a civil IRS summons enforcement proceeding, is precisely the sort of dilatory tactic which Rule 11 was meant to deter:

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. For the language of rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to con-

duct a reasonable inquiry into the viability of a pleading before it is signed. *Eastway Construction Corp. v. City of New York, supra,* 762 F.2d at 253.

## Costs and Fees

■ The customary measure for attorney fee awards is the "lodestar" figure, derived by multiplying an hourly rate by the number of hours reasonably spent by prevailing counsel. *Blum v. Stenson,* 465 U.S. 866, 104 S.Ct. 1541, 1543–45 n. 5 (1984); *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (2d Cir.1980). The hourly rate properly charged for the time of a government attorney is the "amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir.1974); *Spector v. Banner,* 80 Civ. 0639, mem. op. at 2–3 (S.D.N.Y., July 15, 1982).

With respect to the appropriate hourly rate, Assistant United States Attorney Cynthia Keefe ("Keeffe") has submitted an affidavit detailing her background and experience for which an hourly rate of $100.00 is appropriate. *See Mafes v. United States of America,* 84 Civ. 372 (RO) (S.D.N.Y. June 11, 1985); *Spector v. Banner, supra,* slip op. at 3 ($110.00 per hour reasonable for experienced United States Attorney in 1982). As required by *New York Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983), Keeffe has submitted contemporaneous time records of the hours spent opposing Kirksey's Rule 60(b) motion and preparing a cross-motion for an order holding the respondent in civil contempt. Keeffe's diary entries record both the hours and dates:

> Although as a general practice the United States Attorney's office does not keep time records similar to those maintained in private practice, I kept contemporaneous records of my time in this case because my dealings with respondent's prior counsel, Phillips, Nizer, Benjamin,

Krim & Ballon, led me to believe that the motion ... was frivolous.

(Keeffe decl. ¶ 5). The diaries reveal that between November 27, 1985 and January 10, 1986, Keeffe spent thirty-five hours opposing the Rule 60(b) motion and preparing the government's cross-motion and forty-one hours of deposition and oral argument preparation.

In light of the fact that Kirksey's motion raised the issue of representation by former counsel and the issue of waiver of Fifth Amendment rights for the first time in the proceedings, extensive deposition testimony from Phillips, Nizer attorneys was required. Similarly, the parties appeared before the court for oral argument on two occasions, as Kirksey's counsel obtained a one-week adjournment of the January 3, 1986 date and was granted the opportunity to submit additional papers, necessitating a reply from the government. *Mafes v. United States, supra,* slip. op. at 1–2 (diary entries detailing hours spent preparing one set of motion papers satisfy need for contemporaneous time records). In light of these factors, a total of seventy-six hours is reasonable, as conceded by counsel for Kirksey who estimate spending in excess of one hundred hours pursuing the motion. (Declaration of Steven H. Dickman, May 13, 1986, at ¶ 3) In addition, the government has fully documented court reporter costs of $1,042.35 to which it is entitled.

■ The district court has inherent equitable power to adjust the "lodestar" figure to take into account the particular characteristics of the representation and may consider the risk and complexity of the litigation, and the skill of the attorneys in reducing or increasing the amount of the fee award. *City of Detroit v. Grinnell Corp., supra,* 495 F.2d at 473. In addition, this court may consider the relative wealth of the parties in determining the final amount in order to insure that "[a] losing party is not subjected to financial ruin." *Tedeschi v. Smith, Barney, Harris Upham & Co., Inc.,* 579 F.Supp. 657, 664 (S.D.N.Y.1984), *aff'd,* 757 F.2d 465 (2d Cir.), *cert. denied, Chapman v. Smith Barney,*

*Harris Upham & Co.,* —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122, (1985) (footnote omitted); *Cohen v. West Haven Board of Police Commissioners, supra,* 638 F.2d at 505.

■ Neither the government nor Kirksey has attempted to justify an upward or downward adjustment of the lodestar figure reached by the court. Kirksey and his counsel had sufficient time to submit affidavit or documentary evidence concerning their financial inability to withstand the award of fees and have not done so. Similarly, the government has not claimed an entitlement to higher fees based upon the unusual risk or complexity of the litigation. Under these circumstances the court declines to exercise its discretionary power to adjust the lodestar figure.

■ Rule 11 provides "If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose *upon the person who signed it, a represented party, or both, an appropriate sanction* ..." (emphasis added). Fed.R.Civ.P., Rule 11, and this court is aware of the need to specify the party from whom the costs and fees are to be recovered. *See Kamen v. American Telephone & Telegraph, supra,* slip op. at 3609 (Kearse, J., dissenting). In these circumstances, Kirksey must accept some responsibility for his failure to assist counsel in conducting a reasonable inquiry into the procedural posture and merits of this litigation prior to filing the Rule 60(b) motion. For example, Kirksey's former counsel informed him of the November 19, 1985 consent order compliance date for the production of his records, yet newly retained counsel was unaware that such an order was outstanding, and construed the November date as a motion return date. Putting aside the fact that Kirksey compiled his own records, Kirksey had several months prior to retaining new counsel in which to review the material for incriminating documents before the motion was filed, and had seven weeks between November 20, 1985 and January 10, 1986 in which to locate and specify documents which would support a Fifth Amendment claim. As not a single document or record

was offered for such purpose, the court must assume that he declined to assist counsel with such a task, and new counsel did not review the documents. Similarly, it appears that Kirksey did not fully inform his new counsel that he had discussed the contents of the records with attorneys from Phillips, Nizer, and that he had informed prior counsel that the records were "clean" and that he needed time to compile them, prompting Carroll to consent to record production in November, 1985. Had Kirksey provided his attorneys with insight into the material summoned by the IRS or his representations to prior counsel concerning the lack of incriminating material in the records, Kirksey's counsel might have withheld its poorly-founded motion.

In summary, the government is awarded costs and attorney's fees amounting to $1,042.35 and $7,600.00 respectively, as Kirksey's Rule 60(b) motion was undertaken without reasonable inquiry into its factual underpinnings. These costs and fees are to be borne equally by Kirksey and his counsel, and the parties are directed to submit judgment on notice within ten (10) days of this opinion.

IT IS SO ORDERED.