Victoria E. ULLMANN, Plaintiff,

v.

OLWINE, CONNELLY, CHASE, O'DONNELL & WEYHER, et al., Defendants.

Civ. A. No. C-3-85-233.

United States District Court, S.D. Ohio, W.D.

Nov. 2, 1987.

**560**

Victoria E. Ullmann, Columbus, Ohio, for plaintiff.

Gary Hoppe, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW REGARDING IMPO-
SITION OF SANCTIONS ON PLAIN-
TIFF

MICHAEL R. MERZ, United States Magistrate.

This case is before the Court for determination of the amount of sanctions to be imposed on Plaintiff pursuant to the Court's Opinion of September 14, 1987 (Doc. # 117).

As set out at greater length in the September 14th Opinion, the parties settled this case at trial on July 27, 1987, and the terms of the settlement agreement were read into the record in open court. (The transcript of the settlement agreement appears at Doc. # 108). Thereafter Defendants' counsel drafted documents to implement the settlement and forwarded them to Plaintiff's counsel, who approved them and forwarded them to his client. Miss Ullmann refused to sign them, forcing Defendants to choose between reopening the case and moving to enforce the settlement. They chose the latter course and were successful for the reasons set forth in the September 14th Opinion. They now seek their fees and expenses for the motion to enforce.

Having determined that Plaintiff's conduct in refusing to execute the settlement was without merit, the Court must now decide whether, in attempting to upset the settlement, she "multiplie[d] the proceedings in [this] case unreasonably and vexa-

tiously." 28 U.S.C. § 1927. In interpreting § 1927, the Sixth Circuit has not required the proof of bad faith. In *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (1985), the court held that § 1927 permits the award of fees despite the absence of conscious impropriety. In *In Re Ruben*, 825 F.2d 977 (6th Cir.1987) the court further explicated the standard:

There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

825 F.2d at 984.

■ § 1927 authorizes the sanctioning only of attorneys. Plaintiff is an attorney at law admitted to practice before the Ohio Supreme Court in 1977 and a member of the bar of this Court. At least from the time she refused to sign the settlement papers after her trial attorney forwarded them to her, she has been acting on her own behalf in this case. She explicitly agreed to her trial attorney's withdrawal and to proceed *pro se* and has estimated the amount of legal work she did on the case prior to his withdrawal at seventy per cent or more. Accordingly, the Court concludes that she can be held personally liable under § 1927.

The obligation which Plaintiff violated is also supplied by case law.

Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the Court, to make every reasonable effort to see that the agreed terms are fully and timely carried out.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

The Court has already discussed at length in the September 14th Opinion the merits of Defendants' Motion to Enforce the Settlement and Plaintiff's defenses of lack of consideration, duress, and rescission. Since that Opinion was filed, Plaintiff has had two additional opportunities to place before the Court her arguments as to why she should not be sanctioned for not completing the settlement. On October 9, 1987, she filed a Memorandum Contra Motion for Sanctions (Doc. # 126). The Court set a hearing on the motion for sanctions for October 15, 1987. Although Plaintiff failed to appear, claiming that she thought the hearing had been cancelled, the Court was able to conduct the hearing by telephone conference call. (The transcript of the hearing is docketed at Doc. # 132.)

With respect to the issue of duress, Plaintiff claims in her Memorandum Contra that she expected to be given an oral hearing on this issue before the Court decided the motion to enforce the settlement. She never requested such a hearing, as she admitted on October 15 (Doc. # 132, p. 40). She was also aware of S.D.Ohio Rule 4.0.4 which provides that motions in this Court are submitted without oral argument or hearing unless a hearing is ordered by the Court (*Id.*). The Court has already held in the Opinion of September 14 that the motion to enforce did not require an evidentiary hearing since the terms of the settlement were recited into the record.

In any event, Plaintiff was not prejudiced by the failure to hold a hearing on her duress defense since she offered all of the testimony she would have given at such a hearing during the telephone hearing on October 15 (Doc. # 132, pp. 30–40).

The first element of her duress claim is that the Court and Defendants together threatened her with sanctions in excess of $80,000. During the October 15 hearing, she testified how that "threat" was communicated to her by her counsel. There is no material variance between her understanding of what happened and the Court's understanding of the facts. When the Court suggested to Messrs. Glasper and Hoppe that settlement be discussed, Mr. Glasper asked how much the Defendants were willing to pay. Mr. Hoppe countered that they would pay nothing, but they would give up their sanctions motion (which had been pending since April, 1985)

and their fraud counterclaim for releases. At that point the Court asked Mr. Hoppe how much time Defendants had in the case as an indication of what they thought their sanctions motion was worth. It is inconceivable to the Court that settlement negotiations could have proceeded without the Plaintiff's having some idea of what the Defendants thought they could recover on that motion. Plaintiff has repeatedly professed her skill at negotiation and indeed offered *Getting to Yes* by Fisher and Ury as a trial exhibit. At the October 15th hearing she admitted that knowing Defendants' figure was important (Doc. # 132, p. 52). Yet she claims to have been coerced by revelation of the key figure relevant to negotiation of a settlement: how much Defendants thought they were giving up.

■ The second element of her duress claim is that she was concerned about her present job and explaining to her employers about being sanctioned. For the first time on October 15 she revealed to the Court and Defendants that someone had sued her department (the Ohio Department of Agriculture) and

> won my job so my employers are currently in the position of finding me another position and I just found that out the week before, the Friday before I left for this trial and my head was on a chopping block as far as I was concerned because they were going out for me trying to find me another job.

(Doc. # 132, p. 31). The Court understands how this information might have made settling the case more attractive to Plaintiff, but neither the Court nor Defendants knew about it until October 15, 1987, nearly ninety days after the settlement. The legal concept of duress does not include a party's state of mind based on information not known to the threatening party.

■ In sum, Plaintiff's defense of duress is both legally and factually frivolous. Moreover, Plaintiff made absolutely no allegation of duress or even any reference to the underlying facts supposedly supporting that claim when she stood up in open court and said that she was settling the case. Even assuming the law would recognize a

duress defense based on the kinds of facts Plaintiff has alleged, it could hardly tolerate a lawyer's agreeing in open court to a settlement without reference to such facts and then reneging. Plaintiff's position must be that she was not only coerced into settling, but she was also intimidated into not mentioning the fact that she was being coerced when she made her settlement statement. She admitted during the October 15 hearing that she had agreed to the settlement and her statement of agreement was truthful when made (Doc. # 132, p. 30). She was at that time an attorney with nearly ten years experience. It would make a mockery of the law to permit such a person to "sandbag" a court and opposing counsel into discontinuing a trial by pretending to a voluntary settlement without reservation and then reneging on it later. Attorneys are required to be made of sterner stuff and to keep their word when it is given. Miss Ullmann's repudiation of the settlement based on her claim of duress is unreasonable and vexatious.

■ Miss Ullmann also claimed the settlement was unenforceable because Defendants inserted provisions in the draft settlement agreement which had not been agreed upon in open court. She objected to third-party beneficiary status for the witnesses, but that had been contemplated by the oral settlement. She also objected to a New York choice-of-law clause and the specific terms of the confidentiality clause.

There certainly was no obligation on Plaintiff to give up more than she had agreed to. The Court recognized this in refusing to enforce the draft provisions in the settlement agreement which went beyond what had been agreed to. But having agreed to settle the case, Miss Ullmann had an obligation to negotiate about the specific written terms in good faith. It is frequently the case, at least in this Court's experience, that additional wording and substance questions will arise when two lawyers, working in good faith, attempt to put an oral understanding into writing. But Miss Ullmann did not negotiate in good faith. She took minor disagreements over collateral matters as an excuse to repudiate

the substance of the settlement. In her August 16, 1987, letter to Mr. Hoppe repudiating the settlement, she concluded:

> I am willing to renegotiate a settlement. The only way I will voluntarily dismiss this complaint without a cash settlement is if Judge Rice, not the magistrate, says my conduct is sanctionable, that threatening me with $80,000+ of sanctions is appropriate judicial conduct on the part of the magistrate and that your firm has done nothing sanctionable.

(Ex. 5 to Doc. # 111). During the October 15th hearing, she indicated that her idea of a fair cash settlement was between $22,000 and $25,000, the amount of her back wage claim against Defendants (Doc. # 132, pp. 41–42, 48). Her only remaining claims at the time of trial were her Title VII claims on which her principal entitlement, if any, would have been to back wages. This was after she had been given a chance to present her case and had failed to obtain the presence of most of her listed witnesses, expert and lay. In other words, on August 16th she was demanding Defendants either pay her the full amount she could have won after a successful trial or obtain an advisory opinion of the fairness of the settlement and the Magistrate's ethics by District Judge Rice. There is no doubt in the Court's mind that this constituted unreasonable and vexatious conduct by Miss Ullmann. The best that can be said for her behavior is that she had second thoughts after settling the case. The facts will bear the interpretation that she attempted to rescue herself from a desperate trial situation by pretending to settle with every intention of repudiating later and again attempting to obtain money from Defendants.

The Court had previously indicated its intention to sanction Plaintiff for her allegations against the Court's law clerk, Theresa G. Haire. The allegations were essentially that Miss Haire on one occasion during the trial "commented" on Miss Ullmann's testimony by engaging in disapproving body language (Affidavit attached to Doc. # 116, par. 6). Miss Ullmann refused to withdraw the allegation (Doc. # 126), but she did admit at the October 15th hearing that no one but she saw it and that it was probably unconscious behavior on Ms. Haire's part (Doc. # 132, pp. 50–51). Miss Ullmann was also unable to state the legal relevance of the conduct. The Court has previously verbally indicated no monetary sanction would be imposed for filing this allegation, principally because it evoked no necessary response from Defendants. However, the Court finds there is no warrant in law for filing such an allegation and that it was not filed for any proper purpose. Accordingly, its filing was in violation of Fed.R.Civ.P. 11 and Plaintiff is hereby reprimanded for the filing.

Having determined that Defendants had made a *prima facie* showing of entitlement to sanctions, the Court set the hearing for October 15

> ... at which time Defendants may present evidence of their expenses reasonably incurred in enforcing the settlement agreement and Plaintiff may show cause, if cause there be, why she should not be sanctioned.

(Doc. # 117, p. 22). As previously noted, Plaintiff did not appear for the hearing, but the Court was able to conduct it by telephone. Defendants offered proof of their fees and expenses by Affidavit of Gary Hoppe (Doc. # 130). The Affidavit was read to Miss Ullmann by the Court (Doc. # 132, pp. 7–12). She offered no opposing evidence and did not attempt to cross-examine Mr. Hoppe on his Affidavit. Thus the sole evidence before the Court on the amount of fees and expenses and their reasonableness is Mr. Hoppe's Affidavit.

■ In a recent case on the measure of sanctions under Fed.R.Civ.P. 11, the Sixth Circuit has held that they must be limited to the amount of "reasonable expenses" incurred as a result of the Rule 11 violation and imposed on the offended party an obligation to mitigate his damages. *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 404 (6th Cir.1987). While the court did not explicitly make this ruling applicable to § 1927 motions, this Court can conceive of no reason why it should not be applicable. The language of § 1927 ("excess costs, expenses, and attorneys' fees *reasonably incurred* because of such conduct") certainly parallels the lan-

**564**

guage of Rule 11, and the purposes of the two rules—to punish and deter offenders and compensate the offended—are certainly the same.

Thus Defendant can only recover the amounts reasonably expended in enforcing the settlement, considering their duty to mitigate their damages.

In calculating the amount which will reasonably compensate Defendants for their expenses, this Court understands its obligation to be first of all to calculate the "lodestar" amount: reasonable hours times a reasonable hourly rate. *See, e.g. Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

Mr. Hoppe's affidavit shows that after August 14, 1987, when he received first word of Plaintiff's repudiation of the settlement, he expended 51.4 hours and his associate, Mr. Machcinski, expended 4.9 hours in enforcing the settlement, including telephone conferences to attempt to learn what had happened, a telephone conference with the Court, and the drafting of Defendants' Motion to Enforce. Miss Ullmann's only response to the number of hours was to accuse Defendants of padding their time and to label the amount as "excessive and ridiculous" (Doc. #132, p. 21). The Court has no basis on which to conclude either that Defendants did not spend the time they assert or that such amount of time was not reasonable. Plaintiff could have attended the hearing and cross-examined Mr. Hoppe on his affidavit or she could have cross-examined him over the telephone; she could have asked that additional substantiating records be submitted. She did none of these things but chose to rely on accusation alone. The Court expressly finds the amount of time expended to be reasonable.

■ Defendants in this action proceeded *pro se.* They seek attorney fees at the rates they would bill for the time expended to their own clients (Doc. #130, Par. 4). Plaintiff objects that the Court should instead use the rates customary in the Dayton, Ohio, area for similar work. This objection is well taken. *Coulter v. State of Tennessee,* 805 F.2d 146 (6th Cir.1986).

The Court takes judicial notice that Messrs. Hoppe and Machcinski have been admitted to the practice of law nine and ten years respectively. Martindale–Hubbell Law Directory (1986 edition), p. 2019B. Attorneys with similar experience in the Dayton, Ohio, area would ordinarily have billing rates of approximately $100 per hour and the Court finds that to be a reasonable rate for the time expended here. Even though Defendants' opportunity cost of defending this action themselves may in fact have been higher, they are only entitled to the market rate in Dayton.

Multiplying the 56.3 hours expended by the $100 rate gives a "lodestar" figure of $5,630. The Court has not been offered any justification for modification of that figure and finds it will fairly compensate Defendants for the amount of time reasonably expended in enforcing the settlement.

Defendants have also proven expenses associated with the enforcement motion of $935.69 (Hoppe Affidavit, Doc. #130, Pars. 5 and 7). The Court finds that those expenses were reasonably incurred as a result of Miss Ullmann's conduct in attempting to enforce the settlement.

Defendants are hereby awarded sanctions under 28 U.S.C. § 1927 in the amount of $6,565.69 for which amount judgment shall enter in their favor and against the Plaintiff.