WALLY HARPER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23637-89.          Filed October 29, 1992.

*Herbert G. Feinson,* for petitioner.
*Marcie B. Harrison,* for respondent.

BEGHE, *Judge:* Respondent determined the following deficiency in and additions to petitioner's Federal income tax for the taxable year 1983:

*Additions to tax*

| Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|------------|------------------|------------------|------------------|
| $12,001 | $1,200 | $665 | [1] |

[1] 50 percent of the interest due on $12,001.

This case is before us on respondent's motions to dismiss under Rule 123(b)[1] for petitioner's failure properly to prosecute and for monetary sanctions under section 6673(a) against petitioner and petitioner's attorney, Herbert G. Feinson.[2] On the basis of the facts and reasons set forth below, we will grant respondent's motions to dismiss and for monetary sanctions against Mr. Feinson, but will not impose any monetary sanction on petitioner.

Petitioner was a resident of New York City at the time he filed his petition.

### FINDINGS OF FACT

Petitioner is a composer who has written music for Broadway shows. On September 26, 1989, petitioner, through Mr. Feinson, his attorney, filed a petition with this Court seeking redetermination of respondent's determination of a deficiency in petitioner's 1983 Federal income tax. Respondent's answer was filed on November 14, 1989. On July 3, 1990, the Court served notice on the parties that the case was calendared for trial at the Court's New York City trial session beginning December 3, 1990. Attached to the notice was the Court's standing pretrial order. At the calendar call on December 3, 1990, no one appeared on petitioner's behalf. Respondent moved to dismiss under Rule 123(b) for petitioner's failure properly to prosecute. On December 31, 1990, the Court granted respondent's motion and entered decision for respondent.

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in question.

[2] Mr. Feinson is a member of the New York bar and has been admitted to practice before this Court since 1950.

On February 4, 1991, petitioner moved to vacate the Court's order of dismissal. Over respondent's objection, the Court granted petitioner's motion on the ground that the failure to appear at the calendar call was due to Mr. Feinson's oversight,[3] and that petitioner should not be penalized thereby. The Court then returned the case to the general docket.

On June 6, 1991, the case was recalendared for the Court's New York City trial session beginning on November 12, 1991. The Court again served its standing pretrial order, which requires the parties to exchange facts, documents, and other data necessary to expedite the case for trial or settlement, and to stipulate facts to the maximum extent possible, and that each party prepare a trial memorandum substantially in the form prescribed and submit it to the Court and the opposing party not less than 15 days before the first day of the trial session.

On July 15, 1991, respondent served petitioner, through Mr. Feinson, with a request for production of documents pursuant to Rule 72. Respondent requested that petitioner produce documents for inspection and copying on, or before, September 1, 1991, at District Counsel's office. On August 23, 1991, Mr. Feinson sent respondent a facsimile letter stating that he would not produce the documents as requested, but that respondent's counsel could "roam through the entire file" of some 2,000 documents in his office. In response to Mr. Feinson's refusal to comply with respondent's request, respondent filed a motion under Rules 72(b) and 104(b) to compel production of documents, which we granted on September 17, 1991.

In accordance with our order to compel, Mr. Feinson appeared at the District Counsel's office at the appointed date and time (October 7, 1991, at 9 a.m.), but would not let respondent's counsel examine or copy more than one document at a time. As a result, respondent's counsel was able to copy only about 50 documents in 3 days. Moreover, some of the documents Mr. Feinson produced during this copying session were for other taxable years or had already been seen and used by respondent as substantiating evidence of deduc-

---

[3] Mr. Feinson stated in petitioner's motion to vacate that "The default was inadvertent. It was due to an error made in my office. The Notice Setting The Calendar Call Date, when received, got mixed up with papers of another file. The date was never entered in my diary, Exhibit '2'".

tions claimed on petitioner's 1983 Federal income tax return that respondent had allowed prior to determining the deficiency shown in the statutory notice.

On October 24, 1991, pursuant to the Court's standing pretrial order, respondent prepared and timely served her trial memorandum on the Court and petitioner's counsel. Respondent's trial memorandum described the substantive issues in the case as (1) whether petitioner's musical copyright royalty income should be treated as ordinary income or capital gain, (2) whether petitioner had received dividend income, (3) whether petitioner was entitled to various business expense deductions and itemized deductions, and (4) whether petitioner was liable for additions to tax. The issue with respect to the deductions was substantiation.

Respondent's trial memorandum also indicated that respondent's counsel expected to call petitioner as a witness. Neither petitioner nor Mr. Feinson submitted a trial memorandum. Nor did they respond to respondent's proposed stipulations of fact, which included only documents provided by Mr. Feinson at the 3-day copying session.

At the calendar call on November 12, 1991, Mr. Feinson filed a motion for summary judgment under Rule 121 on the grounds that respondent's notice, of deficiency was "null and void" because it was not personally signed by the Commissioner of Internal Revenue, and that the 3-year period of limitations had expired because the extension (Form 872-A), which Mr. Feinson had executed on petitioner's behalf, was invalid as not having been personally signed by the Secretary of the Treasury. Mr. Feinson's motion for summary judgment also stated that "The principal issue is a question of fact."

At the calendar call, respondent moved for sanctions under section 6673(a)(1) against petitioner on the grounds that he had instituted and maintained the proceedings primarily for delay and that his positions were frivolous and groundless. Respondent's motion paper set out the facts outlined above, but made no reference to Mr. Feinson. Inasmuch as the delays in this case appeared to have been caused by Mr. Feinson, we inquired whether respondent was also seeking sanctions against him under section 6673(a)(2). Respondent replied that she was requesting sanctions against both petitioner and Mr. Feinson. Mr. Feinson then filed a motion in opposition stating that petitioner had complied with respond-

ent's discovery request and that he had complied with our order to compel.

At the conclusion of the calendar call on November 12, 1991, we arranged for a conference call between the Court and the parties to be held on November 15, 1991, and ordered Mr. Feinson to be prepared for that conference. We again ordered Mr. Feinson to submit a trial memorandum. Mr. Feinson stated in open court that he would be prepared, that he would submit a trial memorandum, and that he would produce petitioner, Wally Harper, as a witness at the trial.

On November 14, 1991, respondent filed a memorandum of law in support of her motion for sanctions. In the memorandum, respondent addressed the standards for imposing sanctions against petitioner under section 6673(a)(1) and against Mr. Feinson under section 6673(a)(2). On the same date, Mr. Feinson filed a "Reply to the Oral Arguments" and a memorandum, both of which set forth arguments identical to those in his earlier memorandum in support of his motion for summary judgment. Neither of these documents was a trial memorandum.

On November 15, 1991, following the conference call, we issued an order denying petitioner's motion for summary judgment, held respondent's motion for sanctions in abeyance pending final disposition of the case, set a date and time certain for trial (November 22, 1991, at 9 a.m.), ordered petitioner to produce for copying and inspection at the office of District Counsel (on November 19, 1991, at 9 a.m.) all documents that he intended to introduce at trial, ordered the parties to stipulate facts to the maximum extent possible, and ordered that petitioner Wally Harper be present in the courtroom at the scheduled trial. There is no indication in the record that Mr. Feinson appeared at District Counsel's office with the documents for copying, as we had ordered him to do.

At the recall of the case on the scheduled trial date, respondent was prepared to try the case. However, Mr. Feinson was not prepared for trial and, contrary to our order of November 15, 1991, petitioner was not present in the courtroom. We asked Mr. Feinson why petitioner was not present. Mr. Feinson replied that he had not attempted to contact petitioner until the previous night, and was unable to reach petitioner then because he was out of town. We then

reminded Mr. Feinson of our order requiring petitioner to be present. Mr. Feinson replied that the order was "absolutely illegal."

Respondent then moved to dismiss the case under Rule 123(b) for petitioner's failure properly to prosecute. We ordered Mr. Feinson to respond in writing to respondent's motion to dismiss and ordered respondent to submit a supplement to her motion for sanctions setting forth an accounting of the additional costs, expenses, and reasonable attorney's fees incurred to date as a result of the delays caused by Mr. Feinson. We also set a due date for petitioner's response to respondent's supplement.

On December 5, 1991, respondent filed the supplement to her motion for section 6673(a) sanctions. In that document, respondent's counsel, Marcie B. Harrison, states that from February 13, 1991, to December 4, 1991, she and her supervisor, Assistant District Counsel Paulette Segal, spent an estimated 98 additional attorney hours because of Mr. Feinson's misconduct. The statement contains an itemized list of additional tasks that respondent's counsel and her supervisor were required to perform in this case and the number of hours required for each such task. See *infra* note 13 and accompanying text. Contrary to our order of November 22, 1991, Mr. Feinson did not file any response or objection to this supplement.

On February 4, 1992, having received no response to respondent's motions from petitioner or his attorney, we issued a three-page, single-spaced order detailing the procedural history recounted above. We ordered that

on or before February 21, 1992, petitioner's counsel Herbert G. Feinson and petitioner Wally Harper each file with the Court a separate written signed response to respondent's Motion for Sanctions (as supplemented) and to respondent's motion to dismiss. In this connection, petitioner Wally Harper should understand that, in acting on these motions, the Court will take into account, among other things, petitioner Wally Harper's degree of personal awareness and responsibility for petitioner's counsel's course of conduct in this case.

We ordered further that

in addition to regular service, the Clerk of the Court is to serve petitioner Wally Harper at [his home address] with copies of the following: (1) this order (2) respondent's Motion for Sanctions, (3) respondent's memorandum

of law in support of the motion for sanctions, (4) Petitioner's Opposition to the Motion for Sanctions, (5) the Court's order dated November 15, 1991, (6) respondent's Motion to Dismiss for Failure to Prosecute, and (7) respondent's Supplement to Respondent's Motion for Sanctions.

The order was mailed to petitioner at his home address by certified mail, and the post office did not return it to the Court as undeliverable.

The Court has not received any response to this order from petitioner or Mr. Feinson.

### ULTIMATE FINDINGS OF FACT

The course of conduct engaged in by petitioner's attorney, as described above, was so completely without merit or justification as to require the conclusion that it must have been undertaken for some improper purpose such as delay. On the basis of this course of conduct, we find that Mr. Feinson has acted in bad faith so as to multiply the proceedings in this case unreasonably and vexatiously.

### OPINION

This is a case of attorney and taxpayer misconduct. In response to respondent's motions for dismissal and monetary sanctions, we address important questions about the ways in which the Court will deal with attorneys who culpably fail to follow the Court's Rules and orders and with taxpayers who fail properly to prosecute.

The specific issues presented concern the Court's powers to dismiss petitioner's case under Rule 123(b) for his failure properly to prosecute and to impose monetary sanctions on petitioner and his attorney under section 6673(a), and the standards to be applied in exercising these powers. We will first address the question of dismissal, and then turn to the sanctions issues.

### I. *Dismissal*

Rule 123(b) provides that:

For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. * * *

Sanction by dismissal is exercised in the discretion of the trial court. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 629-632 (1962) (inherent power); *Levy v. Commissioner,* 87 T.C. 794, 803 (1986) (Rule 123(b)). Dismissal may properly be granted where the party's failure to comply with Rules and orders of the Court is due to "willfulness, bad faith, or any fault", as contrasted with mere inadvertence or inability. *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958) (Fed. R. Civ. P. 37(b)(2)); *Dusha v. Commissioner,* 82 T.C. 592, 599 (1984) (Rule 104(c)). A case may be dismissed for failure properly to prosecute when petitioner, or counsel on petitioner's behalf, fails to appear at trial and does not otherwise participate in the resolution of petitioner's claim. *Basic Bible Church v. Commissioner,* 86 T.C. 110, 114 (1986).

We exercise our authority to dismiss cautiously and, where fault has been manifested through the acts and omissions of petitioner's counsel, we take special care to assure that dismissal of petitioner's case is warranted. *Freedson v. Commissioner,* 67 T.C. 931, 937 (1977), affd. 565 F.2d 954 (5th Cir. 1978).

The legal standard for involuntary dismissal under Rule 123(b) derives from the standard used for dismissal under rule 41(b) of the Federal Rules of Civil Procedure. *Basic Bible Church v. Commissioner, supra* at 113; Explanatory Note to Rule 123(b), 60 T.C. 1130. The U.S. Court of Appeals for the Second Circuit, to which our dismissal of this case would be appealable, barring agreement to the contrary, has held that a court considering whether to dismiss a case under rule 41(b) of the Federal Rules of Civil Procedure for failing to prosecute must consider the following factors: (1) The duration of a petitioner's[4] failures; (2) whether the petitioner has received notice that further delays would result in dismissal; (3) whether respondent would likely be prejudiced by further delay; (4) a balancing of the need to alleviate court calendar congestion and a party's right to due process; and (5) the efficacy of lesser sanctions. *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir. 1988) (quoting *Harding v. Federal Reserve Bank of New York,* 707 F.2d 46, 50 (2d Cir. 1983)).[5]

---

[4] The words "petitioner" and "respondent" are substituted in lieu of "plaintiff" and "defendant".

[5] See 5 Moore, Moore's Federal Practice, par. 41.12, at 41-154 to 41-155 (2d ed. 1991) (suggest-

Applying these five factors, we conclude that this case should be dismissed under Rule 123(b). We recognize that dismissal is a harsh remedy, but in our view this ultimate sanction is appropriate here, and, in the exercise of our discretion, we will grant respondent's motion to dismiss.

This matter has been pending for more than 2½ years since issue was joined, and the process of discovery has hardly begun on what should be the cut-and-dried issues of substantiation of claimed business expenses and itemized deductions. Even if Mr. Feinson's failure to answer the first calendar call in December 1990 was inadvertent, he thereby incurred an increased obligation not to delay the proceedings further, and to cooperate with his opponent in taking the steps necessary to enable the case to be tried at the Court's next scheduled trial session in November 1991. By refusing to cooperate in the discovery process, Mr. Feinson prevented a stipulation of facts from being prepared and executed, and averted the trial of the case at that next session. Moreover, Mr. Feinson belatedly filed a spurious motion for summary judgment at the November 12 calendar call.

We have dismissed cases under Rule 123(b) for similar reasons where parties refused to cooperate during the discovery phase and have disobeyed the Rules and orders of the Court. *Long v. Commissioner,* 742 F.2d 1141 (8th Cir. 1984), affg. per curiam an order of this Court; *Rollercade, Inc. v. Commissioner,* 97 T.C. 113, 116-117 (1991); *Van Duyn v. Commissioner,* T.C. Memo. 1991-247; *Wallis v. Commissioner,* T.C. Memo. 1991-246.

In our order of February 4, 1992, which was mailed to petitioner at his residence in New York City, we set forth a detailed procedural history of the case, attached copies of the relevant documents, and specifically ordered petitioner to respond personally in writing to the motions for dismissal and sanctions. After having been fully informed of the procedural history of this case and having been given ample time to respond, petitioner neither offered an explanation nor took

---

ing that the standard in *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958) of "willfulness, bad faith, or any fault" to dismiss under Fed. R. Civ. P. 37(b)(2) should also be applied under Fed. R. Civ. P. 41(b)); see also *Cine Forty-Second Street Theatre v. Allied Artists,* 602 F.2d 1062 (2d Cir. 1979) (applying gross negligence standard under Fed. R. Civ. P. 37(d)); *Dusha v. Commissioner,* 82 T.C. 592, 599 (1984) (rejecting bad faith requirement for dismissal under Rule 104(c) and Fed. R. Civ. P. 37(b)(2) applied in *Fox v. Commissioner,* 718 F.2d 251 (7th Cir. 1983), affg. an order of this Court).

any steps to ensure that his case would be properly prosecuted.

When it comes to a petitioner's attention that his case is not being properly prosecuted and that the Court is considering dismissal and monetary sanctions, the petitioner cannot sit idly by and expect the Court to allow the case to continue to wander in the wilderness without any provision for its resolution. Petitioner chose Mr. Feinson as his legal representative and cannot now avoid the consequences of the acts and omissions of his attorney on the grounds that petitioner was not personally at fault, *Link v. Wabash Railroad Co., supra* at 633-634, or that he did not know what was going on. By informing petitioner what had been happening to his case and giving him opportunities to be heard, we have afforded him due process of law. However, petitioner has not taken advantage of these opportunities, even after we ordered him to personally appear in the courtroom and then ordered him to respond in writing to respondent's motions.

When deciding whether to dismiss a case under Rule 123(b), we also consider the prejudice to respondent in allowing the case to continue. The Commissioner of Internal Revenue has the congressionally mandated function of collecting tax revenue and has the right to obtain judicial resolution of tax disputes within a reasonable period of time. *Freedson v. Commissioner, supra* at 935. We believe that respondent would be prejudiced if we allowed this case to continue any further.

In deciding to dismiss this case, we have balanced the need to alleviate Court calendar congestion against petitioner's right to due process. Inasmuch as petitioner has been afforded ample opportunity to be heard and explain, dismissing his case will not deny him due process. Despite our efforts and the efforts of District Counsel, the case is no closer to resolution on the merits than it was 18 months ago when it was reinstated after being dismissed for petitioner's failure to appear at the December 1990 calendar call. This case has also unduly burdened the resources of the Court by occupying the attention of two judges on two separate New York City trial calendars without making any headway. The Court has almost 45,000 cases on its docket; if petitioners in all these cases carried on in this fashion, the Court would not

only be dead in the water, but would quickly sink as new cases poured in.

Finally, in assessing the efficacy of lesser sanctions, we do not impose a sanction less drastic than dismissal because petitioner has, through his own fault, neglected properly to prosecute his case. One effect of lesser sanctions is to alert the offender that more severe penalties will result if his misconduct persists. By personally notifying petitioner, in our order of February 4, 1992, that respondent had moved to dismiss and sending him a copy of that motion, we alerted petitioner that he was in danger of having his case dismissed with prejudice. We therefore believe that no sanction other than dismissal would be appropriate in light of the case's protracted history of delay and petitioner's total failure to display any interest in having it properly prosecuted to disposition through trial or settlement.

We remind Mr. Feinson and the bar that the justification for the ultimate sanction of dismissal is deterrence. *Levy v. Commissioner,* 87 T.C. at 804; *Dusha v. Commissioner,* 82 T.C. at 605-606, 608 (citing *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)). No lesser sanction will effectively convey the message to petitioner's counsel, the Tax Court bar, and their clients, that we will not tolerate, in this or any other case, the delaying tactics that we have encountered in this case.

## II. *Monetary Sanctions Under Section 6673(a)*

The remaining issues are whether we should impose monetary sanctions under section 6673(a) on petitioner for instituting and maintaining these proceedings primarily for delay or taking frivolous and groundless positions, and on his attorney for unreasonably and vexatiously multiplying the proceedings. We will first discuss respondent's motion for sanctions against petitioner's attorney.

### A. Sanctions Against Attorney Under Section 6673(a)(2)

The so-called "American Rule" is that a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975). However, the rule has exceptions. We have power to assess attorney's fees against

counsel for misconduct and abuse of process. These powers are derived from a variety of sources, including the Internal Revenue Code, the Tax Court Rules of Practice and Procedure, and the Federal Rules of Civil Procedure.[6]

Respondent has moved for sanctions against Mr. Feinson under section 6673(a)(2). Because we have not discussed the standards for imposing such sanctions in a reported opinion, we take this occasion to outline the scope and applicability of the statutory provision.

Section 6673(a)(2)[7] provides that

(2) COUNSEL'S LIABILITY FOR EXCESSIVE COSTS.—Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require—

(A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, * * *

Section 6673(a)(2) of the Internal Revenue Code is derived from section 1927 of the Judicial Code, 28 U.S.C. section 1927 (1988). H. Rept. 101-247, at 1399-1400 (1989). 28 U.S.C. section 1927 provides that

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[8]

---

[6] Sec. 6673(a)(2) (sanctions for unreasonable and vexatious multiplication of proceedings); Rule 1 (invoking the Fed. R. Civ. P. when suitably adaptable to govern the matter at hand); Rule 33(b) (sanctions against a party or counsel for signing a pleading without making a reasonable inquiry that it is well grounded in fact or law, or lacks a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass, delay, or increase the costs of litigation); Rule 50(a) (applying Rule 33(b) to motions); Rule 70(e)(2) (sanctions for signing discovery requests in violation of Rule 70); Rule 81(g)(2) (Court may award costs and attorney's fees when a party fails to attend a deposition or serve a subpoena); Rule 90(d) (sanctions with respect to requests for admissions); Rule 104(c) (sanctions for failing to obey discovery orders); Rule 121(f) (sanctions for bad faith affidavits in connection with a motion for summary judgment); see sec. 7453 (statutory authority for Tax Court Rules of Practice and Procedure). See generally Comment, "Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process", 44 U. Chi. L. Rev. 619 (1977).

[7] Sec. 6673(a)(2) was added to the Code by sec. 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400, and applies to positions taken after Dec. 31, 1989, in proceedings pending on or commenced after such date.

[8] After the Supreme Court's decision in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), holding that 28 U.S.C. sec. 1927 did not authorize the sanction of allowing attorney's fees, Congress amended sec. 1927 to provide for attorney's fees. Antitrust Procedural Improvements Act of 1980, Pub. L. 96-349, sec. 3, 94 Stat. 1154, 1156; see H. Conf. Rept. 96-1234 (1980).

Due to the dearth of court decisions interpreting section 6673(a)(2), we look for guidance to decisions interpreting 28 U.S.C. section 1927. The case law under 28 U.S.C. section 1927 on the level of misconduct justifying sanctions is not uniform.[9] Most circuits, including the Second Circuit, require a showing of bad faith. *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986). However, a minority of circuits, including the Sixth Circuit and the District of Columbia Circuit, do not require such a showing. *In re Ruben,* 825 F.2d 977, 983-984 (6th Cir. 1987); *Reliance Ins. Co. v. Sweeney Corp., Maryland,* 792 F.2d 1137, 1138 (D.C. Cir. 1986); see Derfner & Wolf, Court Awarded Attorney Fees, par. 10.05[3], at 10-61 to 10-64 (1989 & Supp. 1991).

In *Oliveri v. Thompson, supra* at 1273, the Second Circuit held that:

Imposition of a sanction under [28 U.S.C.] §1927 requires a "clear showing of bad faith". *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir. 1986) (quoting *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971)). Like an award made pursuant to the court's inherent power, an award under §1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *See Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, 920 (2d Cir. 1976). Although our precedents have not always made this bad-faith requirement clear, *see Cheng [v. GAF Corp.],* 713 F.2d [886, 891 n.3 (2d Cir. 1983)] (stating that it need not be decided whether an award under §1927 requires a finding of bad faith or merely "unreasonable conduct"), we hold today that an award made under §1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power, *accord Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013-14 (S.D.N.Y. 1982) (Weinfeld, J.). Indeed, the only meaningful difference between an award made under §1927 and one made pursuant to the court's inherent power is, as noted above, that awards under §1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

In discussing the inherent power of a Federal court to sanction an attorney, the Second Circuit articulated the standard for a finding of bad faith.

---

[9] There may be some uncertainty whether an appeal on the attorney sanctions would ultimately be heard by the Second Circuit or the D.C. Circuit. See sec. 7482(b)(1).

This bad-faith exception permitting an award of attorneys' fees is not restricted to cases where the action is filed in bad faith. An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. "'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *see Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir. 1977). This circuit has interpreted the standard restrictively:

To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both "'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes'" and "a high degree of specificity in the factual findings of [the] lower courts."

[*Oliveri v. Thompson, supra* at 1272; citations omitted.]

See also *Chambers v. NASCO, Inc.,* 501 U.S. \_\_\_\_, 111 S. Ct. 2123 (1991) (bad faith test applied in imposing sanctions against a party under Federal court's inherent power).

While the bad faith standard appears to be consistent with the legislative history of 28 U.S.C. section 1927, see H. Conf. Rept. 96-1234 (1980), the D.C. Circuit does not require a showing of bad faith. In *Reliance Ins. Co. v. Sweeney Corp., Maryland,* 792 F.2d 1137, 1138 (D.C. Cir. 1986), the D.C. Circuit held that

While the language of [28 U.S.C.] §1927 suggests deliberate misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect reckless indifference to the merits of a claim. *In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir. 1985). We adopt these standards in the case at bar.

Because we have found that Mr. Feinson has acted in bad faith in unreasonably and vexatiously multiplying the proceedings, we need not use this case as the occasion to choose between the Second Circuit's bad faith standard and some lesser standard, such as recklessness or negligence, in applying section 6673(a)(2). We therefore refrain in this case from announcing the standard to be applied as the general rule under section 6673(a)(2) and only address the matter now before us.

The Federal courts have sanctioned attorneys under 28 U.S.C. section 1927, the precursor of section 6673(a)(2), in a

variety of circumstances. In *Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1019 (2d Cir. 1988), the Second Circuit affirmed an order of the U.S. District Court for the Eastern District of New York imposing monetary sanctions on an attorney for abuses during pretrial discovery. See also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980) (discovery abuse sanctionable under 28 U.S.C. sec. 1927). This case is replete with pretrial discovery abuses. Mr. Feinson failed to comply with the Court's well-known rule, set forth in the Court's standing pretrial order, based upon *Branerton Corp. v. Commissioner,* 61 T.C. 691 (1974), which requires the parties to exchange facts, documents, and other data necessary to expedite the case for trial or settlement. When Mr. Feinson told respondent's attorney to come to his office and "roam through the entire file" of some 2,000 documents, he forced respondent's counsel to file a motion to compel production of documents, which we readily granted. As the Second Circuit observed in *Apex Oil Co. v. Belcher Co., supra* at 1020:

The failure to confer in good faith over discovery disputes in violation of a local rule clearly "multiplies the proceedings . . . unreasonably and vexatiously," and section 1927 thus provides ample authority for sanctions.

Mr. Feinson's tactic of handing over the documents for copying one item at a time unreasonably and vexatiously multiplied the proceedings. This tactic violated our order compelling document production and prevented discovery from getting off the ground.[10] Mr. Feinson prevented the case from being ready for trial on the last day of the Court's 2-week trial session when he refused to comply with our order of November 15, 1991, after the calendar call, providing, among other things, for production of the remaining documents on November 19, 1991, and setting the case for trial on November 22, 1991.

Inasmuch as one of the principal substantive issues in this case is the substantiation of petitioner's business expenses and itemized deductions, the production of documents was

---

[10] If, as Mr. Feinson told respondent's counsel, there were 2,000 relevant documents in his files, and it took 3 days to copy 50 of them, it would have taken 60 days at the same rate (or an elapsed time of 12 business weeks—almost 3 months) to copy the entire file. At this snail's pace, respondent's counsel would have been making copies of these documents through the Thanksgiving and yearend holiday seasons, and the case could not have been tried at the Court's November 1991 trial session.

critical to putting the case in shape for a stipulation of agreed facts and, ultimately, for trial.

In *Mone v. Commissioner,* 774 F.2d 570 (2d Cir. 1985), affg. T.C. Memo. 1984-500 and T.C. Memo. 1984-499, a tax protester case, the Second Circuit used 28 U.S.C. section 1927 to sanction the taxpayers' attorney for multiplying the proceedings unreasonably and vexatiously. Although this case does not appear to be a typical tax protester case, Mr. Feinson advanced frivolous and groundless tax protester type arguments in petitioner's motion for summary judgment and in his "Reply to the Oral Arguments". Mr. Feinson argued that the notice of deficiency was invalid because it lacked the Commissioner's signature, even though it bore the District Director's signature stamp; he also argued that the Form 872-A extending the period of limitations was invalid because it was not personally signed by the Secretary of the Treasury.

A notice of deficiency is not invalid because it bears a stamped signature. *Urban v. Commissioner,* 964 F.2d 888 (9th Cir. 1992), affg. per curiam T.C. Memo. 1991-220; *Commissioner v. Oswego Falls Corp.,* 71 F.2d 673 (2d Cir. 1934), affg. 26 B.T.A. 60 (1932). In addition, the 3-year period of limitations had not expired. Mr. Feinson executed the Form 872-A that extended the period of limitations. See sec. 6501(c)(4). The Secretary has properly delegated authority to sign Forms 872 and 872-A to officials of the Internal Revenue Service, including the group manager who signed the Form 872-A in this case. See sec. 7701(a)(11)(B); sec. 301.7701-9, Proced. & Admin. Regs.; Delegation Order No. 42 (Rev. 25), 1992-8 I.R.B. 12; 1 Administration, Internal Revenue Manual (CCH), par. 1229; see also *Huffmeyer v. Commissioner,* T.C. Memo. 1987-48; *Cindrich v. Commissioner,* T.C. Memo. 1984-294, affd. without published opinion 770 F.2d 1067 (3d Cir. 1985).

We also note that Mr. Feinson, in filing his motion for summary judgment, made no attempt to demonstrate the lack of a genuine issue of material fact as required by Rule 121(b). To the contrary, Mr. Feinson stated in his attached memorandum that "The principal issue is a question of fact." Mr. Feinson also refused to comply with other orders of the Court, most notably our standing pretrial order to stipulate facts and to submit a trial memorandum.

Mr. Feinson has been afforded appropriate procedural protections. See *Roadway Express, Inc. v. Piper, supra;* H. Conf. Rept. 96-1234 (1980). Respondent's motion for sanctions and supplement thereto and our orders gave Mr. Feinson fair notice that he was in danger of sanctions under section 6673(a)(2), and we gave him numerous opportunities to respond to the motion. At the calendar call on November 12, 1991, Mr. Feinson received notice that we were considering imposing sanctions on him under section 6673(a)(2), yet he persisted in his dilatory and obnoxious tactics and made no attempt to remedy the situation. At the second hearing on November 22, 1991, Mr. Feinson had an opportunity to address respondent's motion for sanctions, but did not do so. Our order of February 4, 1992, afforded Mr. Feinson a further opportunity to respond in writing to respondent's motion, but again he chose not to do so.

The record in this case, considered as a whole, demonstrates that petitioner's counsel has displayed a contemptuous disregard for the Rules and orders of this Court, has acted in bad faith, and has knowingly abused the judicial process throughout the course of this proceeding. Mr. Feinson has unreasonably and vexatiously multiplied the proceedings within the meaning of section 6673(a)(2). We will therefore grant respondent's motion for sanctions against Mr. Feinson.

Turning to the amount of the sanction to be imposed on Mr. Feinson, we note that respondent's counsel submitted a claim only for excess attorney's fees. She did not include a claim for excess costs or expenses reasonably incurred during this period, although section 6673(a)(2) expressly encompasses them.[11] Our discussion is therefore limited to respondent's excess attorney's fees.

Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. The product is known as the "lodestar" amount. *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 563 (1986); *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Ullmann v. Olwine, Connelly, Chase, O'Donnell, & Weyher,* 123 F.R.D. 559, 562 (S.D. Ohio 1987), affd. without published opinion

---

[11] See H. Conf. Rept. 96-1234 (1980) (stating that an attorney violating 28 U.S.C. sec. 1927 "should be required to satisfy personally this full range of excess costs attributable to such conduct.").

857 F.2d 1475 (6th Cir. 1988) (applying the lodestar approach under 28 U.S.C. sec. 1927).

Respondent has submitted an itemized day-by-day accounting[12] of the estimated excess attorney time spent on this case due to Mr. Feinson's misconduct. Respondent's counsel estimates that from February 13, 1991, to December 4, 1991, she and her supervisor spent 98 excess hours working on this case.[13]

Although Mr. Feinson has not objected to the accounting by respondent's counsel, we do not find that all 98 hours of respondent's claimed excess attorney time were caused by Mr. Feinson's misconduct. When we vacated our original dismissal of the case on December 31, 1990, we gave petitioner and his counsel the benefit of the doubt; we attributed petitioner's failure to appear at the December 3, 1990, calendar call to Mr. Feinson's inadvertence, which appeared at that time to constitute nothing more serious than negligence in failing to set up office procedures that would have given him the necessary reminder. Accordingly, after review of respondent's counsel's accounting of excess attorney time, we hold that Mr. Feinson is personally liable for 74 hours of excess attorney time spent by respondent's counsel.[14]

Respondent has requested that we impose a fee of $100 per hour for the excess attorney time. Due to the lack of precedent interpreting section 6673(a)(2) and a dearth of cases applying 28 U.S.C. section 1927 in favor of the Government, we apply the standards used under rule 11 of the Federal

---

[12] Respondent's accounting was in the form of a motion, not an affidavit. Although affidavits are often used in calculating the imposition of attorney's fees, they are not required under sec. 6673(a)(2) or 28 U.S.C. sec. 1927. Statements of fact in motions are subject to the signing requirements and applicable sanctions of Rules 50(a) and 33(b). See 5A Wright & Miller, Federal Practice & Procedure, sec. 1339 (1990) (verification of motions through affidavits is unnecessary unless expressly required); cf. Rules 230(a) and 231(d) (affidavit required for request for attorney's fees under sec. 7430).

[13] Although Government attorneys do not normally keep detailed contemporaneous records of their time, such records are very useful when requesting sanctions for attorney's fees. See *United ed States v. Kirksey*, 639 F. Supp. 634, 637-638 (S.D.N.Y. 1986). Where the accounting is estimated, appears unreasonable, or contains items that are not caused by any misconduct, we are free to reduce (or increase) the number of hours. *See New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983).

[14] We have excluded time spent in preparing the notice of objection to petitioner's motion under Rule 123(c) to vacate our original dismissal; retrieving the case after the dismissal was vacated; preparing the request for production of documents; preparing the trial memorandum; and attending the calendar call on Nov. 12, 1991. We believe that respondent's counsel would have had to do these things even if Mr. Feinson had cooperated in putting the case in shape for trial or settlement.

Rules of Civil Procedure,[15] which contains language similar to section 6673(a)(2) and 28 U.S.C. section 1927, to determine the rate to charge offending counsel for respondent's expenditure of excess attorney time.

In *United States v. Kirksey,* 639 F. Supp. 634, 637 (S.D.N.Y. 1986), the District Court held that under rule 11 of the Federal Rules of Civil Procedure:

> The hourly rate properly charged for the time of a government attorney is the "amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974); *Spector v. Banner,* 80 Civ. 0639, mem. op. at 2-3 (S.D.N.Y., July 15, 1982).

This is also the standard we will use under section 6673(a)(2).

In her supplemental accounting, respondent's counsel stated that she had 3 years' experience as an attorney.[16] Respondent's District Counsel's Office is in New York City, a city with a cost of living and rates of attorney's fees that are among the highest in the nation. See Statistical Abstract of the United States 1991, table No. 772, at 479 (11th ed. 1991) (Consumer Price Indexes for selected areas). In these circumstances, $100 per hour is a reasonable rate for the excess attorney's fees incurred by respondent.[17] See *Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1090-1093 (3d Cir. 1988) ($100 per hour reasonable for assistant U.S. attorney); *United States v. Kirksey, supra* at 637 (same).

---

[15] Fed. R. Civ. P. 11 provides, in part, that:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

[16] The supplement also stated that the supervising attorney had 14 years' experience. Inasmuch as respondent's supplement provided no allocation of the time spent by respondent's principal attorney on the case and her supervisor, we attribute all attorney hours to Ms. Marcie B. Harrison, respondent's principal attorney in this case. However, an allocation of attorney hours between junior and senior attorneys would have been appropriate in these circumstances and might have justified using a higher rate for the supervising attorney.

[17] Although we have decided that $100 per hour is a reasonable rate for respondent's attorney time in this case, the prevailing market rate standard that we apply does not restrict us to any predetermined hourly rate, such as that found in sec. 7430(c)(1)(B)(iii). Therefore, if sufficient evidence were provided, we could assess attorney's fees under sec. 6673(a)(2) at a rate that is higher (or lower) than $100 per hour.

Unlike an application for attorney's fees under section 7430, there is no rate ceiling on attorney's fees imposed under section 6673(a)(2). Compare *Napier v. Thirty or More Unidentified Federal Agents, supra* at 1093 (rate ceiling under the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412, not applicable to awards for attorney's fees under Fed. R. Civ. P. 11) with *Bayer v. Commissioner,* 98 T.C. 19 (1992) (discussing and comparing the $75 per hour ceiling under sec. 7430(c)(1)(B)(iii) with that under the EAJA).

To arrive at the lodestar amount, we multiply respondent's 74 excess attorney hours by the hourly rate of $100. There is a strong presumption that the lodestar amount represents a reasonable fee, and we hesitate to adjust it further. See *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 565-566 (1986); *Blum v. Stenson,* 465 U.S. 886, 897-901 (1984). Recognizing that our power to impose sanctions under section 6673(a)(2) carries a potential for abuse, we construe the statute narrowly and cautiously so as not to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." See *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir. 1985); *Mone v. Commissioner,* 774 F.2d 570, 574 (2d Cir. 1985), affg. T.C. Memo. 1984-500 and T.C. Memo. 1984-499.

We find that $7,400 is a reasonable amount for respondent's excess attorney's fees incurred by reason of Mr. Feinson's unreasonable and vexatious multiplication of these proceedings. We therefore will order that Mr. Feinson personally pay respondent $7,400, that he make payment by means of a certified check, cashier's check, or money order in favor of the Internal Revenue Service, and that such payment be delivered to respondent's counsel at the Office of District Counsel in New York City not later than 30 days from the date the order is served.

B. *Sanctions Against Petitioner Under Section 6673(a)(1)*

Section 6673(a)(1) [18] provides that:

(1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC.—Whenever it appears to the Tax Court that—

---

[18] Sec. 6673(a)(1) was amended by sec. 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400, and applies to positions taken after Dec. 31, 1989, in proceedings pending on or commenced after such date.

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

(C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

In our order of February 4, 1992, we told petitioner what had been going on and warned him that we were considering dismissing the case and imposing monetary sanctions on him and his attorney. Contrary to our order, in which we detailed the procedural history of the case for petitioner's benefit, he never responded to respondent's motion to dismiss or her motion for sanctions under section 6673(a). Moreover, petitioner did not take any corrective steps or attempt to explain or excuse his role in prolonging this proceeding.

Under section 6673(a)(1), our authority to impose sanctions on taxpayers is not limited to pro se taxpayers or to cases where no other sanction is imposed. We have imposed monetary sanctions on taxpayers represented by counsel, see *Wolf v. Commissioner*, T.C. Memo. 1991-212; *Fritz v. Commissioner*, T.C. Memo. 1991-176, and in cases where we dismissed for failure properly to prosecute, see *Page Family Preservation Trust B v. Commissioner*, T.C. Memo. 1991-223. We have no doubt that we could have imposed an additional sanction on petitioner. Nevertheless, in the exercise of our discretion, in the circumstances of this case, we decline to impose a penalty under section 6673(a)(1) against petitioner. In dismissing petitioner's case with prejudice under Rule 123(b), we are imposing the ultimate sanction. However, we admonish petitioner, and other taxpayers and their counsel, that in the future, in appropriate situations, we will not only dismiss the case, but also impose additional sanctions on the taxpayer, as well as counsel.

To reflect the foregoing,

> *An appropriate order imposing a sanction on Herbert G. Feinson will be issued, and an order of dismissal and decision for respondent will be entered.*

Reviewed by the Court.

HAMBLEN, CHABOT, PARKER, COHEN, CLAPP, SWIFT, GERBER, PARR, WELLS, COLVIN, HALPERN, and CHIECHI, *JJ.,* agree with the majority opinion.

JACOBS, WRIGHT, RUWE, and WHALEN, *JJ.,* concur in the result only.