T.C. Memo. 2004-228

UNITED STATES TAX COURT

BENEDICT JOHN CASEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 812-02L.              Filed October 7, 2004.

Benedict John Casey, pro se.

<u>Daniel N. Price</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to section 6330(d), petitioner seeks review of an Appeals Office determination sustaining respondent's proposed levy to collect his unpaid 1992 Federal income taxes.[1]

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT[2]

The parties have stipulated certain facts which we incorporate herein by this reference. When petitioner filed his petition, he resided in Liberty Hill, Texas.

Petitioner's 1992 Tax Return

On his 1992 Federal income tax return, petitioner reported $3,681 of gross income and claimed a $294.59 refund. On this return, petitioner listed his address as 7262 Madeira Drive, Fort Worth, Texas 76112 (the Madeira Drive address), which was also his parents' address.

Respondent's Examination of the 1992 Tax Return

By letter dated August 17, 1994, and addressed to the Madeira Drive address, respondent notified petitioner that, according to third-party information reports, petitioner had received $10,744 of nonemployee compensation that was not reported on his 1992 tax return. The letter requested petitioner to provide information about this matter within 30 days.

---

[2] Petitioner failed to file an opening or reply brief. Consequently, the Court did not have available either petitioner's proposed findings of fact or any objections he might have had to respondent's proposed findings of fact. Although we might deem petitioner to have conceded respondent's proposed findings of fact, see Rule 151(e)(3); Estate of Jung v. Commissioner, 101 T.C. 412, 413 n.2 (1993), we instead base our findings of fact on the record before us.

By letter dated September 10, 1994, and showing the Madeira Drive address, petitioner requested additional time to respond to this request. On April 4, 1995, respondent received from petitioner a purported Schedule C, Profit or Loss From Business, listing his principal business as "Property Inspector", showing $8,416 of previously unreported income from "Gross receipts or sales", and claiming $2,672.72 of previously unclaimed business expenses, including alleged expenses for travel, film, pager, and "walking shoes".

Notice of Deficiency

By notice of deficiency dated May 17, 1995, and mailed to the Madeira Drive address, respondent adjusted petitioner's income to include $10,744 of nonemployee compensation and determined a $2,782 deficiency in petitioner's 1992 Federal income tax and a $556 accuracy-related penalty pursuant to section 6662. In the notice of deficiency, respondent allowed petitioner no business expense deduction. The notice of deficiency contained instructions for filing a petition with the Tax Court, and indicated that any Tax Court petition should be filed within 90 days (i.e., by August 15, 1995).

On June 15, 1995, respondent received from petitioner correspondence, stating: "Here are the copies of milege [sic], & film & pager & auto care for 92 tax return." Included in this correspondence, along with handwritten mileage logs and

photocopied invoices, was the first page of the aforementioned notice of deficiency.

In a letter to petitioner dated August 1, 1995, and mailed to the Madeira Drive address, the chief of respondent's examination division indicated that the information petitioner had submitted on June 15, 1995, had been considered but did not support a change to the adjustments previously proposed. The letter noted that if petitioner disagreed with these findings, he could petition the Tax Court, pursuant to the instructions contained in the notice of deficiency.[3]

Petitioner did not petition the Tax Court to challenge the determinations in the notice of deficiency.

Collection Activity

Respondent sent petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, dated November 30, 2000. On Form 12153, Request for a Collection Due Process Hearing, dated December 20, 2000, and showing an address of 2314 Parker Lane #11, Austin, Texas (the Parker Lane #11 address), petitioner requested an Appeals Office hearing.[4] On the Form 12153, the only issue that petitioner raised with respect to the

_____

[3] As previously noted, the notice of deficiency indicated an Aug. 15, 1995, deadline for petitioner to petition the Tax Court.

[4] The address listed on the Form 12153 is simply "2314 Parker Ln. # 11", without a city or State designation. On cross examination, petitioner acknowledged that the address listed on the Form 12153 is in Austin, Texas.

proposed collection action was respondent's rejection of his proffered mileage records.

In June 2001, petitioner moved from the Parker Lane #11 address to Leander, Texas. Petitioner did not notify respondent or the Appeals Office of this address change but requested the United States Postal Service to forward his mail.

By letter dated October 11, 2001, and addressed to petitioner at the Parker Lane #11 address, respondent's Austin Service Center acknowledged receiving petitioner's Form 12153 and stated that someone in the Appeals Office would contact petitioner about his request for a hearing. Petitioner acknowledges receiving this letter.

By letter dated October 18, 2001, and addressed to the Parker Lane #11 address (the October 18 letter), Appeals Officer Sue Cody (Cody) informed petitioner that his Appeals Office hearing was scheduled for November 6, 2001. The United States Postal Service returned this letter marked "RETURN TO SENDER/NO FORWARD ORDER ON FILE/UNABLE TO FORWARD".

Cody then sent petitioner another letter, dated October 31, 2001 (the October 31 letter), to 2314 Parker Lane #1, Austin (the Parker Lane #1 address).[5] In this letter, Cody informed

_____

[5] According to Cody's "Case Activity Records" as contained in respondent's administrative file, the Parker Lane #1 address was suggested by information contained in respondent's Information Data Retrieval System transcripts for petitioner.

petitioner that the Appeals Office hearing was scheduled for November 27, 2001.  This letter was not returned.

Cody's October 18 and 31 letters stated identically that because petitioner had failed to file a petition in the Tax Court challenging the notice of deficiency, he had "no further judicial review of the items in the notice of deficiency".  Cody indicated, however, that she would informally review petitioner's request at the hearing.  Petitioner did not appear for the scheduled Appeals Office hearing.  Cody was unsuccessful in reaching petitioner at the telephone number shown on petitioner's Form 12153.

On December 13, 2001, respondent sent petitioner substantially identical notices of determination to the Parker Lane #1 address and the Parker Lane #11 address.[6]  Petitioner admits receiving both transmittals.

The notices of determination correctly state the tax year in question as being 1992.  Identical attachments to each notice of determination describe the issue as relating to petitioner's 1992 tax year, but in discussing verification of legal and procedural requirements, each attachment incorrectly refers twice to petitioner's 1998 tax year and once to petitioner's 1998 account.

---

[6] The only differences between the two notices of determination, apart from petitioner's address, is that they (appropriately) list different certified mail numbers and appear to bear nonidentical original signatures by "J.T. Benton, Team Manager".

Each attachment indicates that the only issue raised by petitioner was the disallowance of his claimed mileage expenses and states in pertinent part:

> The only issue raised by the taxpayer is the fact that his mileage was not allowed * * *
>
> Since taxpayer was issued a Statutory Notice of Deficiency and did not petition Tax Court, this issue cannot be considered in connection to the CDP hearing. Taxpayer is not entitled to judicial review of the items in the Statutory Notice per IRC sec. 6330(c)(2)(B). However, I offered to review his records and consider his request for adjustment as an audit reconsideration, apart from the CDP [collection due process] hearing.
>
> Taxpayer never responded to my letters or telephone calls.
>
>         *     *     *     *     *     *     *
>
> Taxpayer indicated in his request for a CDP hearing that he didn't agree with the balance due because the agent didn't allow him business miles. I offered taxpayer an audit reconsideration, apart from the CDP hearing, but taxpayer did not call or make the schedule[d] conference. His "mileage records" do not support an adjustment without further explanation and clarification.
>
> It appears taxpayer has a history of dropping the ball – making some contact – then not responding. This happened during the examination, with collection, and now in appeals.
>
> The levy balances the need for the efficient collection of taxes with the legitimate concern of Benedict John Casey that any collection action be no more intrusive than necessary, because he has failed to cooperate in proving the liability is incorrect and failed to offer any collection alternative.

OPINION

I.  Petitioner's Contentions

In his petition, petitioner raises numerous technical and procedural complaints about respondent's determination to proceed with collection action.  Petitioner filed no posttrial brief.  In his pretrial memorandum, petitioner distilled his complaints into these three issues:  (1) Whether the Appeals Office failed to offer petitioner the hearing that he requested pursuant to section 6330(b)(1); (2) whether this Court may redetermine his 1992 underlying income tax liability; and (3) whether the notices of determination are invalid because they contain some incorrect references to petitioner's 1998 tax year and account.[7]

II.  Whether the Appeals Office Failed To Offer Petitioner a Hearing

If a taxpayer fails to pay any Federal tax liability within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on the taxpayer's property.  Sec. 6331(a).  At least 30 days before taking collection action, the Secretary must provide the taxpayer with a final notice of intent to levy that describes, among other things, the availability of administrative appeal.  Sec. 6331(d).

---

[7] We have carefully considered all issues raised in the petition.  We construe most of them as falling within the ambit of the three issues identified above, and we address them in that context.  The other issues raised in the petition are without merit, moot, or irrelevant; in any event, we deem petitioner to have abandoned such other issues.

Upon request, the taxpayer is entitled to an administrative hearing before the Appeals Office of the IRS.  Sec. 6330(b)(1). A face-to-face hearing is not invariably required:  If a taxpayer is given a reasonable opportunity for a hearing but fails to take advantage of it, the Appeals Office may make a determination on the basis of the case file.  See, e.g., Leineweber v. Commissioner, T.C. Memo. 2004-17; Armstrong v. Commissioner, T.C. Memo. 2002-224; sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.

Respondent sent petitioner a letter, dated October 11, 2001, and addressed to the Parker Lane #11 address, advising petitioner that he would soon be contacted regarding his hearing.  A short time later, Appeals Officer Cody mailed petitioner a letter, dated October 18, 2001, and also addressed to the Parker Lane #11 address, scheduling the hearing.  This letter was returned to sender with a notation that the United States Postal Service was unable to forward it.

The nub of petitioner's complaint, as we understand it, is that once the October 18 letter was returned, the Appeals Office was on notice that Parker Lane #11 was no longer petitioner's current address.  Construed broadly, petitioner's argument seems to be that the Appeals Office failed to exercise due diligence in discovering his new address.

Petitioner does not dispute, however, that he received the October 11 letter, which was also mailed to the Parker Lane #11 address. If nothing else, the October 11 letter should have alerted petitioner that he needed to update his address with respondent.[8] Moreover, after the October 18 letter was returned, the Appeals officer re-sent the correspondence to the Parker Lane #1 address, as suggested by transcripts in respondent's administrative file. This letter was not returned. We believe it most likely that petitioner received it (despite his allegation to the contrary), just as he admits receiving the notice of determination that the Appeals Office mailed to the Parker Lane #1 address a short time later in December 2001.

But even if petitioner did not receive the October 18 letter, we are not persuaded that the Appeals Office was at fault, especially considering that petitioner moved from the address he listed on his Form 12153 without informing respondent. Cody's attempt to contact petitioner at two different addresses, one supplied by petitioner himself and the other suggested by respondent's records, demonstrates reasonable effort in these circumstances, rather than a defect in the hearing process.

---

[8] It may be that petitioner's receipt of the Oct. 11, 2001, letter lulled him into believing that all mail sent to him at the Parker Lane #11 address would be successfully forwarded to him. We are unpersuaded by petitioner's suggestion that it was somehow respondent's fault that the Oct. 18, 2001, letter was not forwarded to him.

Moreover, the only issue petitioner raised in his Form 12153 related to his underlying 1992 tax liability.  As discussed below, petitioner was not entitled to raise this issue at the Appeals Office hearing.

III. <u>Petitioner's Challenge to His Underlying Tax Liability</u>

A taxpayer may challenge the validity of his underlying tax liability in an Appeals hearing conducted pursuant to section 6330 only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

Petitioner claims he did not receive the notice of deficiency in time to petition the Tax Court.  We are unpersuaded by petitioner's claim.  On the basis of all the evidence, we conclude that petitioner received the notice of deficiency sometime before June 15, 1995, which was the date respondent received petitioner's correspondence enclosing, among other things, the first page of the notice of deficiency.

Petitioner insists that he enclosed no part of the notice of deficiency in the correspondence that respondent received June 15, 1995.  He speculates that someone at the Internal Revenue Service must have shuffled the first page of the notice of deficiency into the file containing his correspondence.  We are unpersuaded by petitioner's theory, which is supported by nothing other than petitioner's speculation.  After observing

petitioner's demeanor at trial, his lackadaisical attitude in his dealings with respondent and this Court, and his propensity for blaming others for his troubles, we do not regard petitioner as a credible witness, particularly in regard to this matter.  In any event, there is no evidence to suggest that the notice of deficiency could not be delivered to the Madeira address to which it was addressed or that it was ever returned to respondent.

On the basis of all the evidence, we conclude that petitioner actually received the notice of deficiency dated May 17, 1995, sometime before June 15, 1995--well in time to petition the Tax Court.  Accordingly, pursuant to section 6330(c)(2)(B), petitioner is precluded from challenging his underlying tax liability in this proceeding.[9]

IV.  Validity of the Notices of Determination

The notices of determination correctly state in their headings that the instant collection proceeding relates to petitioner's tax period that ended December 1992.  Identical attachments to each notice of determination also state in their initial paragraphs: "The balance due at issue is for Mr. Casey's 1992 individual tax (from 1040) for 1992."  In discussing

---

[9] Notwithstanding the preclusion rule of sec. 6330(c)(2)(B), Appeals Officer Cody offered to consider petitioner's mileage records informally.  Cody's offer of informal consideration, which evinces good faith on her part, does not entitle petitioner to dispute his underlying tax liability in this proceeding.  See Behling v. Commissioner, 118 T.C. 572, 578-579 (2002); sec. 301.6330-1(e)(3), Q&A-E11, Proced. & Admin. Regs.

verification of legal and procedural requirements, however, the attachments refer twice to petitioner's 1998 tax year and once to petitioner's 1998 account.  Petitioner seizes upon these misstatements as establishing the invalidity of the notices of determination and infirmities in the administrative process.

When read in the context of other information in the notices, which makes it clear that the notices relate to petitioner's 1992 tax year, and of other materials in the administrative file, the references to petitioner's 1998 tax year are plainly typographical errors, as Appeals Officer Cody declares in her affidavit, which is in evidence.[10]

The evidence shows that Cody reviewed, among other things, respondent's final notice of intent to levy, the transcripts of petitioner's account, and the case history leading up to the collection action in question.  Her review of the transcripts and other materials satisfies the section 6330(c)(1) requirement that the hearing officer "obtain verification from the Secretary that the requirements of any applicable law or administrative

---

[10] For instance, the attachment to each notice of determination states:  "IDRS shows an assessment of tax, penalty and applicable interest made on the 1998 tax period".  The next sentence, however, states:  "This assessment was made on 10/16/1995."  This latter date corresponds with the date that petitioner was sent the statutory notice of balance due for his 1992 taxes, as indicated by the plain-language transcript of petitioner's 1992 account that is in evidence.

procedure have been met". See, e.g., <u>Yacksyzn v. Commissioner</u>, T.C. Memo. 2002-99.

In the attachment to each notice of determination, Appeals Officer Cody states: "I have had no prior involvement with this taxpayer concerning the 1998 tax period before this CDP case." On the basis of this statement, which misstates the tax period in question, petitioner alleges that respondent failed to show that the Appeals officer was "impartial" with respect to this collection proceeding as required by section 6330(b)(3). As previously indicated, we attach little significance to the typographical error regarding the tax period in question. For purposes of section 6330(b)(3), an "impartial" officer is one "who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320." See <u>Perez v. Commissioner</u>, T.C. Memo. 2002-274. Petitioner has presented no evidence that Appeals Officer Cody was previously involved in his case. We conclude that the section 6330(b)(3) impartiality requirement was satisfied in this case.

V.  <u>Conclusion</u>

Petitioner has not made a valid challenge to the appropriateness of the proposed collection action or offered any collection alternatives. The Appeals officer did not act in an arbitrary or capricious way, or in an unlawful or unreasonable

manner, in sustaining respondent's proposed collection action, and accordingly did not abuse her discretion.  See Lunsford v. Commissioner, 117 T.C. 183, 185 (2001).  We sustain respondent's proposed collection action.

VI.  Petitioner's Motion for Sanctions Against Respondent

During trial, petitioner orally moved to impose sanctions on counsel for respondent.  In support of his motion, petitioner asserted vaguely that "it was my belief that all of his [respondent's counsel's] communications were vexatious and, at that time, tactically not in my favor."  He complained broadly that respondent's counsel burdened him with an "inundation of paperwork."  Although the Court invited petitioner to address his motion on brief, petitioner failed to file any brief.

Section 6673(a)(2) allows the Tax Court in its discretion to sanction an attorney admitted to practice before the Court if the attorney has "unreasonably or vexatiously multiplied the proceedings".  See Harper v. Commissioner, 99 T.C. 533 (1992) (imposing sanctions under section 6673(a)(2) on the taxpayer's counsel for repeated and egregious conduct during the discovery process that caused significant delay); Dixon v. Commissioner, T.C. Memo. 2000-116 (imposing sanctions on counsel for the IRS for intentionally misleading the Court).

Petitioner's motion for sanctions is without basis or merit. The record does not suggest that respondent's counsel has engaged

in sanctionable conduct.  The record does show that petitioner has been uncooperative in complying with respondent's reasonable requests to prepare this case for trial pursuant to this Court's Rules and orders.  Petitioner failed to respond to respondent's numerous pretrial letters seeking informal disclosure of information.  After respondent implemented formal discovery procedures, petitioner still refused to cooperate and ignored the Court's December 12, 2003, Order that he comply with respondent's motion to compel discovery of documents.  Instead of meaningful communication or cooperation in preparing for trial, what respondent received from petitioner, over a period beginning in September 2002, and continuing until shortly before trial, was a series of vexatious cartoon-like messages.[11]

---

[11] For instance, on Jan. 23, 2004, respondent's counsel received from petitioner a sheet of paper bearing the handwritten message, "SURRENDER, DANIEL", with a smiley-face voice balloon that says "You mean, I am not the all-powerful Oz?".  Days before the scheduled Feb. 2, 2004, trial, respondent's counsel received from petitioner a similar missive that bore the handwritten message, "February 2, 2004: The Day You See The Shadow Of Defeat.", with a smiley-face voice balloon that says "Is it Groundhog Day again?"

If anyone has engaged in sanctionable conduct in this proceeding, it is petitioner.[12]  We strongly caution him against proceeding in bad faith in future litigation before this Court.

<u>Decision will be entered</u>

<u>for respondent, and an appropriate</u>

<u>order will be issued denying</u>

<u>petitioner's motion for sanctions</u>.

---

[12] In fact, by Order dated Jan. 16, 2004, this Court sanctioned petitioner for failing to comply with its Dec. 12, 2003, Order to comply with respondent's request for production of documents.